LASTER, *Respondent,*
*v.*
HIEBERT et ux, *Appellants.*
(TC 77-3-199, SC 25575)

587 P2d 461

Emil R. Berg, Oregon City, argued the cause for appellants. With him on the briefs was John Henry Hingson III, Oregon City.

Robert W. Goodwin, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Holman, Tongue, and Bryson, Justices.

TONGUE, J.

## TONGUE, J.

This is a suit for specific performance of a lease and option agreement involving 10 acres of land in Clackamas County. Defendants appeal from a decree in favor of plaintiff. We affirm.

Defendants' primary contentions are that plaintiff did not perform the required conditions precedent so as to be entitled to a decree of specific performance of the option provision and that defendants did not waive the failure by plaintiff to perform her obligations under the terms of the lease and option.

On May 18, 1968, the parties entered into a lease and option agreement under which plaintiff paid $60 at that time and was to pay $60 per month as rent for a period of two years.[1] Plaintiff was also to pay all taxes and assessments on the property. The agreement granted plaintiff an option to purchase the property for $8,500 and provided that:

"If the second party elects to exercise the option herein granted, said second party shall pay to the first party the sum of Five Hundred & No/100—Dollars as a first and down payment, and execute an agreement of sale and purchase in the form attached hereto, on or before the 18th day of May, 1970, at 5:00 o'clock P.M. The first party agrees to execute said agreement of sale upon the exercise of said option by the second party as herein provided and thereupon to place to the credit of said second party on said purchase agreement, the rental installments theretofore paid by the second party on this lease, in the manner following, to-wit:

"There shall first be deducted from the rental installments so paid, interest at the rate of six per cent per annum on the said purchase price from the date of this agreement to the next following rent payment date, and thereafter interest at said rate shall be so deducted each rent payment date on the balance of said purchase price remaining unpaid on the preceding rent payment date.

---

[1]The agreement was entered into by plaintiff and her husband. Since that time plaintiff has divorced and her husband has assigned to her his interest.

[ 495 ]

Said interest to be so deducted during the entire period of this lease as if the agreement for the purchase of said premises had been entered into at the date hereof. The second party shall thereupon be required to pay down only the difference between the said down payment and the sum of the installments paid by the second party, under the terms of the herein lease, after deducting the interest as above provided therefrom.

"Upon the second party exercising the option herein granted to purchase, first party agrees to furnish within ten (10) days thereafter a title insurance policy or an abstract of title, continued to date, at option of first party, showing marketable title to the above described premises in first party subject to building restrictions, zoning ordinances, if any, and any liens or incumbrances against said premises to be assumed by second party. * * *"

At that time defendants were also purchasing the property under an identical lease-option agreement and had listed it for sale with William Elliott, a realtor for whom defendant Hildegard Hiebert was employed as a salesperson. The agreement was prepared by Mr. Elliott, who testified that he considered it to be a sale of the property to plaintiff. Plaintiff's payments under the contract were initially paid to him for application to the contract under which defendants were purchasing the property and also to his commission.

Although the agreement was in the form of a lease-option agreement, with $60 monthly payments as rent until and unless the option to purchase was exercised, both parties treated the transaction as a contract for sale of the property, at least at the beginning and for most purposes. At the end of most (if not all) years, the plaintiff, according to her testimony, called Mrs. Hiebert to ask the amount of interest for the previous year. As previously noted, this amount was to be deducted from the amount of the monthly payments in determining the amount applicable to the principal of the unpaid balance of the purchase price to be credited to plaintiff for the purpose of purchasing the property under the option provision. Plaintiff

testified that Mrs. Hiebert would then give her the amount of such interest for that year. Plaintiff also offered in evidence "slips" of paper with the amounts of such interest for the years 1970, 1973 and 1974, with the signature of Mrs. Hiebert on the "slips" for 1973 and 1974. Plaintiff treated such amounts as interest payments for tax purposes.

Similarly, for each year beginning with the year 1968 and continuing through 1975, defendants treated the payments received from plaintiff as payments of principal and interest for purchase of the property, rather than as payment of rent, and filed income tax returns on that basis.

Plaintiff did not, however, "elect" to exercise the option to purchase the property on or before May 18, 1970, as provided in the agreement, at least in any formal manner. It also appears that plaintiff did not always make the payments promptly and also permitted taxes to become delinquent.

By letter dated October 21, 1970, defendants informed plaintiff that "your lease is now null and void" and that the premises were to be vacated. Plaintiff's husband testified that he then went to defendants' home to talk about catching up on the payments and that "they [defendants] said 'Just as soon as you make up the payments * * * we will put it on a contract' " and that he then made those payments and borrowed the money to pay the delinquent taxes. By then more than $500 had apparently been paid on principal, as required for a down payment.

Defendants denied agreeing that when these payments were made they would "put it on a contract." They admitted, however, that plaintiff then paid the delinquent payments and taxes. Defendants continued, however, to treat the transaction as a sale of the property, for tax purposes, rather than as a lease.

Plaintiff's husband then talked to Mr. Elliott, the realtor who had handled the original transaction,

[ 497 ]

including preparation of the lease-option agreement, and to whom plaintiff was making the monthly payments about putting the transaction "on a contract." He was told by Elliott to "write a letter to him to have them put it on a contract." He then wrote a letter to Elliott, dated January 26, 1971, as follows:

> "As you know, in May of 1970 our lease option on the Hiebert, Harrison property should have been put on a contract. We are now requesting that this be done."

Mr. Elliott also testified that he was to notify plaintiff and her husband when they had paid enough money to exercise the option; that he had done that.

Plaintiff received no response to the January 26, 1971 letter, and for some unexplained reason did not pursue the matter further at that time. As previously noted, by then the agreement had expired as of May 18, 1970, according to its terms. Plaintiff continued, however, to make the $60 monthly payments. After January 1973 those payments were no longer made to Mr. Elliott, but directly to defendants. Such payments were accepted by defendants and no attempt was made to evict the plaintiff, despite the fact that some of such payments were late. Plaintiff also made some improvements on the property, consisting of a well and a fence. And, as in the past, at the end of some, if not all, of the succeeding years plaintiff called Mrs. Hiebert to get the amount of interest to be deducted in computing the balance due on the purchase price and Mrs. Hiebert responded by giving to plaintiff the amount of such interest for such years.

At some time in 1976 plaintiff was getting a divorce from her husband, who assigned his interest in the property to her. Plaintiff then made a further request to defendants to "put it on a contract." Plaintiff testified that defendants then told her to pay all of the taxes; that she then borrowed money to pay the taxes and told Mrs. Hiebert that "everything had been taken care of"; that Mrs. Hiebert then "wanted a title search"; that plaintiff then obtained a preliminary

title report (which was mailed to defendants), and had an attorney prepare a contract of sale. Defendants then refused to sign a contract for sale of the property.

Mrs. Hiebert testified that although plaintiff had called and asked to "put it on a contract," she told plaintiff that she "wouldn't even talk" until the taxes were paid; that the taxes were then paid and plaintiff's husband then asked to "put it on a contract," but that she then said "no." Mrs. Hiebert also denied telling plaintiff to provide her with a title report and testified that although it may have been mailed to her, she did not look at it. At that point the trial judge said "I don't think she's being candid."

On March 11, 1977, plaintiff filed her complaint in this case. After hearing the testimony, the trial court held that plaintiff was entitled to a decree requiring defendants to specifically perform the lease-option agreement by the execution of a standard printed form contract for the sale of the real property.

In appealing from that decree defendants first contend that plaintiff did not perform the conditions precedent so as to be entitled to specific performance of the option provision, in that she repeatedly fell behind in monthly payments and in the payment of property taxes, and made no attempt to exercise the option prior to its expiration on May 18, 1970, despite the "time essence" provisions of the agreement. Defendants cite our recent decision in *Usinger v. Campbell,* 280 Or 751, 572 P2d 1018 (1977), among other authorities.

In *Usinger* this court affirmed the decree of a trial court denying specific performance of an earnest money agreement with a time essence clause in a case in which plaintiffs had failed to tender payment within the time required by the contract. In so holding, however, this court noted (at 758) that the trial court had found that plaintiffs had failed to carry their burden of proving that defendants had either waived the "time essence" clause or granted plaintiffs an extension of time for payment.

[ 499 ]

Defendants contend in this case that they did not waive the failure of plaintiff to perform or extend the time for payments, saying that in order to constitute waiver there must be an "intentional relinquishment of a known right" which "must be manifested in some unequivocal manner," citing *Waterway Terminals v. P. S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965).

In this case, defendants accepted many late payments by plaintiff. Plaintiff relies upon the holding by this court in *Johnson et al v Berns et al,* 111 Or 165, 173, 209 P 94, 224 P 624, 225 P 727 (1924), that:

"The principle is that all the terms of the contract are binding upon all the parties thereto and that if the vendor, for whose benefit the stipulation about time being of the essence of the contract is made, would insist upon it, he must act promptly upon that provision so that any indulgence upon his part will amount to a nullification of that feature of the covenant. In effect, by operation of law upon his indulgence, a new contract is brought into existence for the time being, from which that clause is absent, and it so remains in this modified form until by reasonable notice to the opposite party that it will thereafter be insisted upon, the agreement between the parties is restored to its original form. Until thus reinstated by reasonable notice, the seller cannot suddenly and without fair notice, pounce upon the purchaser, oust him from possession, and cancel his rights under the contract. * * *"

*See also Peck v. Security Bank of Oregon,* 276 Or 61, 554 P2d 505 (1976).

That rule has proper application in this case to plaintiff's failure to make monthly payments promptly. It has no application to plaintiff's failure to exercise the option to purchase the property on the date specified in the contract. In this case, however, defendants continued to treat the agreement as being in effect, and as a contract for the sale of land, long after its expiration date and after defendants' letter of October 21, 1970. In addition, according to what we believe to be the preponderance of the most credible

evidence, defendants gave plaintiff to understand that if she paid the delinquent taxes and provided a preliminary title search defendants would "put it on a contract."[2]

For these reasons, although the evidence was conflicting and was not as clear as might be desired, we believe that the preponderance of the evidence established that defendants waived the time essence provisions of the agreement and agreed to an extension of the entire agreement as a contract for the sale of land (including the time for exercise of the option to purchase the property), and that defendants' requirement that plaintiff provide a title search (which she was under no obligation to do) furnished sufficient consideration for such an agreement.

Defendants also contend that in "holding over" after expiration of the lease-option agreement plaintiff was a tenant only; that the further payments of $60 per month were no more than the amount due and payable as rent and that the option to purchase was not extended, citing Annot., 15 ALR3d 470 (1967), among other authorities.

This is not a simple case of "holding over." Under the facts of this case, as previously stated, we hold that defendants both waived the "time essence" provisions of the agreement and agreed to extend the entire lease-option agreement, including the time for exercise of the option. *Cf.* Annot., 15 ALR3d 470, 484-85, supra.[3]

For these reasons, the decree of the trial court is affirmed.

---

[2] *Cf. Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978).

[3] We have not overlooked defendants' additional contentions, but believe that they have no proper application under the facts and circumstances of this case.