Argued and submitted February 5, affirmed April 22, 1980

DAVIDSON, et al,
*Respondents,*
*v.*
WYATT,
*Petitioner.*

(No. 38-248, CA 13176, SC 26445)

609 P2d 1298

Fred A. Anderson, of Anderson, Dittman & Anderson, Tigard, argued the cause and filed a brief for petitioner.

Frank Noonan of Winfree & Noonan, Portland, argued the cause and filed a brief for respondents.

PETERSON, J.

### PETERSON, J.

This is a suit by optionees to obtain specific performance of a written option to purchase real property. The trial court sustained defendant optionor's demurrer to the plaintiffs' second amended complaint, and judgment was thereafter entered for the defendant. The Court of Appeals, in a per curiam opinion, reversed and remanded. 41 Or App 187 (1979).

The defendant, in his petition for review, contends that the trial court's ruling should be upheld for either of two reasons. The first is that the complaint did not allege that the option was exercised according to its terms either during the period originally prescribed or during the period allowed by an alleged oral agreement to extend the option. The second is that the oral extension agreement as alleged is void under the statute of frauds, ORS 41.580(5).[1]

More specifically, the primary issues before us are:

1. When an option provides, by its terms, that it is to be exercised by payment of a portion of the purchase price, is tender of payment excused by the optionor's repudiation of the option prior to the expiration of the time for its exercise?

2. Assuming that an agreement to extend the time for exercise of an option is within the sta-

---

[1] The statute provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *.

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

For purposes of this opinion, we assume that an option to purchase real property is, within the meaning of the statute, an agreement for the sale of an interest in realty. *See Neppach v. Or. & Cal. R. R. Co.*, 46 Or 374, 394-95, 80 P 482 (1905); *Kingsley v. Kressly*, 60 Or 167, 111 P 385, 118 P 678 (1911).

tute of frauds,[2] is a complaint seeking enforcement of the option as extended sufficient to withstand a demurrer if it alleges that the optionee did not exercise the option during its initial term in reliance upon an oral extension agreement but does not allege that the oral agreement was made at the request of the optionor?

We first consider the problem of the oral extension.

EFFECT OF ORAL EXTENSION AGREEMENT

The allegations of the complaint which are relevant to this issue read as follows:

"Prior to June 1, 1977 [the date provided in the option as the final date for its exercise], plaintiffs and defendant entered into a verbal [*sic*] agreement to extend the time for exercise of the above option contract up to and including January 1, 1978.

"Defendant received a valuable consideration for extension of the option in that defendant deferred certain tax liabilities from 1977 to 1978.

"Plaintiffs, although able to do so, did not exercise their right to purchase the above described real property prior to June 1, 1977, in reliance on the above verbal [sic] agreements to extend the time for exercise of the option."

The trial court, in its memorandum opinion, reasoned that it was not enough for plaintiffs to allege that they relied on the oral agreement for an extension of time. It is necessary, the court said, "to show that the waiver was at the instance and request of the party waiving the agreement in order that such party might obtain a benefit therefrom." This requirement, the court concluded, is found in our decisions in *Neppach v. Or. & Cal. R. R. Co.*, 46 Or 374, 80 P 482 (1905), and *Osburn v. DeForce*, 122 Or 360, 257 P 685, 258 P 823 (1927). The Court of Appeals, in reversing, also cited the *Neppach* case as well as the more recent decisions in *Stevens v. Good Samaritan Hosp.*, 264 Or 200,

---

[2] As to whether an agreement to extend the time for performance of a contract within the statute of frauds must itself be in writing to be enforceable *see Neppach v. Or. & Cal. R. R. Co.*, 46 Or 374, 80 P 482 (1905), and 2 Corbin on Contracts 104-107, § 307 (1950).

504 P2d, 749 (1972), and *United Farm Agency v. McFarland*, 243 Or 124, 411 P2d 1017 (1966).

Although the parties and the trial court, under the influence of our prior cases, treated this aspect of the case as depending on the applicability of an exception to the statute of frauds or of an estoppel to rely on the statute, we do not believe that this case presents a true statute of frauds problem. As we discuss in more detail below, it is more accurate to frame the issue in terms of waiver of a contract provision and estoppel to later retract the waiver and rely on the strict terms of the contract.

*Neppach v. Or. & Cal. R. R. Co., supra*, appears to be the principal case upon which the trial court relied in considering whether an optionee may successfully assert the terms of an oral modification of an option contract which is within the statute of frauds. In *Neppach* the plaintiff was purchasing land from the defendant under a written contract calling for installment payments. While the contract was in force, a controversy arose between defendant and a third party over the title to the land. Because of defendant's uncertainty as to whether it would be able to deliver clear title when the full price was paid, its agents agreed with plaintiff that no further installment payments were to be made until the controversy over title was settled. Later, after title was cleared and without allowing the plaintiff a reasonable time in which to make up the payments, defendant notified plaintiff that the contract was canceled because the installment payments had not been made on time. Plaintiff brought an action for breach, and we held that the defendant, under the circumstances, could not rely on the statute of frauds to deny the validity of the oral agreement. Assuming, we said, that the oral agreement was within the statute and therefore void, nevertheless it was relied upon by the plaintiff and the defendant could not thereafter deny its validity to the injury of the plaintiff. 46 Or at 395.

In explanation of this holding, we pointed out that the provision in the contract of sale for the time of the payments was for the defendant's benefit and could be waived. *Id.* We also pointed out that it was the defendant which had requested the extension agreement because of the uncertainty whether, when the plaintiff had made all of the payments, defendant would be able to perform its promise to deliver title. 46 Or at 396. In the opinion we quoted from cases holding that it would be inequitable, and would open the door to fraud, to permit one party to a contract to induce the other to depart from the terms of the written agreement and then, relying on the statute, to insist upon a strict adherence to its terms. 46 Or at 396-97. *Neppach*, however, contains no suggestion that we believed that the applicable rule is limited to situations in which the oral agreement was made at the request of the party who later asserts the bar of the statute:

> "* * * The statute of frauds may not be invoked to perpetrate a fraud, nor will a party be permitted to insist upon the statute to protect him in the enjoyment of advantages procured from another, who, relying on an oral agreement, has acted and placed himself in a situation in which he must suffer wrong and injustice if the agreement is not enforced. A party to a contract for the sale of land, who knowingly consents or agrees to a postponement of the performance by the other at the time specified of some stipulation for his benefit, cannot, after the other has acted upon such consent, avail himself of the default, and treat the contract as forfeited, although the performance of the stipulation at the time specified may have been made of the essence of the contract: * * *." 46 Or at 397.

The *facts* in some of our later cases are consistent with defendant's position and the trial court's rationale. In *Scott v. Hubbard*, 67 Or 498, 136 P 653 (1913), and *United Farm Agency v. McFarland*, 243 Or 124, 411 P2d 1017 (1966), the modification was induced by the party who later attempted to rely on the statute, and we held that a party who had

changed position in reliance on an oral modification could assert the terms of the modification in spite of the statute of frauds. But the opinions do not hold that the right to prove an oral modification and detrimental reliance upon it depends on which party requested it. *See also* the discussion in *Kingsley v. Kressly*, 60 Or 167, 173-174, 111 P 385, 118 P 678 (1911).

*Osburn v. DeForce*, 122 Or 360, 257 P 685, 258 P 823 (1927), also contains language which could support the trial court's reading of the *Neppach* decision. *Osburn* was an action by an employee to enforce a written contract of employment as orally modified. We held that the defendant was not estopped to claim the benefit of the statute of frauds, ORS 41.580(1). We said that the estoppel principle was well illustrated in *Neppach* and that, in contrast, the case before us did not contain the necessary elements of estoppel. We pointed out that it was the employee, rather than the employer, who had requested the oral modification of the contract, and that the modification benefited only the plaintiff. No conduct on the defendant's part, we said, "induced the plaintiff to seek the modification." 122 Or at 372.

In spite of that language in the opinion, *Osburn* does not stand for the proposition that reliance on an oral modification of a contract which is within the statute of frauds has no effect unless the modification was requested by the party who later attempts to rely on the statute. The court appears to have based its holding that there was no estoppel upon this premise: The plaintiff had not changed his position in reliance on the oral agreement in such a way that it would be inequitable to enforce the written contract according to its terms. 122 Or at 373. In light of the reasoning in previous and later cases, the suggestion in *Osburn* that estoppel in this context only operates against a party who requested the oral modification, or induced the other party to request it, is not an accurate statement of the law.

*Neppach* was most recently cited in *Stevens v. Good Samaritan Hosp.*, 264 Or 200, 504 P2d 749 (1972), which was an action for breach by an employee against his employer of an alleged oral contract to employ the plaintiff for a period of 15 years. The plaintiff alleged that, with defendant's knowledge, he had abandoned a lucrative business in order to take employment with defendant and that he was financially damaged when defendant discharged him after only five years. Although the case involved an oral agreement rather than an oral modification of a written agreement, we suggested no difference in principle. We held that although the agreement was within the statute of frauds, the complaint was sufficient to withstand a demurrer because the above allegations would permit proof of all the elements of estoppel. We cited, in support of our holding, both *Neppach* and *United Farm Agency v. McFarland, supra,* which also involved the oral modification of a written agreement. There is no indication in the opinion that it was necessary for plaintiff to allege that the oral agreement was made at defendant's suggestion or inducement.

The defendant in this case has not cited any decisions, and we have found none, in which the elements of estoppel were present but the defendant was nevertheless permitted to rely on the statute of frauds simply because the oral contract or oral modification was not induced by him or not made at his request. The authorities on the law of contracts do not suggest that the operation of the estoppel principle in this context is limited in that fashion. *See* Restatement, Contracts § 224 (1932); 2 Corbin on Contracts 111-120, § 310 (1950); 3 Williston on Contracts 783-810, § 533A (3d ed Jaeger 1960).

In the cases discussed above we framed the central issue as one involving the statute of frauds. We have spoken at times of an exception to the statute and at times of an estoppel to assert it. The analysis has not always been clear, but it is obvious that this line of cases and the case now before us do not present pure

statute of frauds problems. The distinction can be illustrated by contrasting the present case with a hypothetical variation on the same facts.

Suppose that plaintiffs alleged a written option to purchase and a later oral agreement, supported by consideration, to extend the option period for one year. Suppose further that they then alleged that before the expiration date provided in the written option defendant had told them that he had changed his mind and would not honor the extension agreement. Suppose, finally, that the only relief plaintiffs sought was a declaration that defendant was obliged to keep the option open for that additional year. Under those circumstances the question would be the enforceability of the oral agreement as such, and we would have to determine whether the oral modification agreement was void as being within the statute of frauds[3] and, if so, whether the plaintiffs' allegations brought the case within some exception to the statute.

The case actually before us is different. These plaintiffs are not attempting to enforce an executory oral contract. The contract under which they claim is in writing. Their contention is, in effect, that the optionor has waived one of the provisions of the written agreement—the provision that the option must be exercised, if at all, by a certain date—and that because the plaintiffs, in reliance on that waiver, let that date go by without attempting to exercise the option, the optionor is now estopped to withdraw that waiver and to insist on his rights under the expiration provision of the written option.

Corbin discusses this question. He points out that the issue of estoppel to insist upon strict application of contract provisions is the same whether or not the contract is within the statute of frauds. The fact that the estoppel is based in part on an oral modification does not, in his view, require a special approach:

---

[3] *See Norris, B & S v. Eastgate Theatres,* 261 Or 56, 63-64, 491 P2d 1018 (1972).

"\* \* \* Where 'time was of the essence'—that is, where performance by the plaintiff within a specified time was a condition precedent to the defendant's duty to perform his part—if the plaintiff has been caused to delay his performance beyond the specified time by the request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay. \* \* \*.

"Where some performance by the plaintiff, not involving the time element, is a condition precedent, and the failure of the plaintiff to render such performance is caused by the defendant and not by the plaintiff's own inability, the failure to perform that condition is not a good defense in a suit upon the contract. This would be so in the cases of contracts not within the statute of frauds; and it is equally so of contracts that are in writing and are required to be so by the statute. Waiver of conditions and estoppel to assert them are subjects that are fully considered in dealing with contracts quite independently of the statute of frauds; and it is not necessary to discuss either 'waiver' or 'estoppel' at this point. It is only necessary to insist that there is nothing in the statute of frauds to prevent them from being fully operative in the usual way." 2 Corbin on Contracts 112-114, § 310 (1950). (Footnotes omitted.)

The results of our own cases support this analysis. When an estoppel to insist on the strict terms of a contract is created by conduct rather than by express waiver, our opinions suggest no concern with whether the contract is or is not within the statute of frauds.[4] Our opinions in the cases cited above discuss the policy behind the statute of frauds, but we can find no indication that the results are different than they would have been had the cases been analyzed simply in terms of waiver and estoppel.[5]

---

[4] *See, e.g., Laster v. Hiebert*, 284 Or 493, 500, 587 P2d 461 (1978); *Stinemeyer v. Wesco Farms, Inc.*, 260 Or 109, 487 P2d 65 (1971); *County of Lincoln v. Fischer*, 216 Or 421, 453-456, 339 P2d 1084 (1959).

[5] These observations do not apply to *Stevens v. Good Samaritan Hosp.*, 264 Or 200, 504 P2d 749 (1972), discussed above, in which we permitted, on

■      Returning to the complaint before us, we hold that the plaintiffs have adequately alleged the necessary elements of estoppel. The complaint alleges that while there was still time for plaintiffs to exercise the written option according to its terms, the parties made an oral agreement to extend the time for its exercise and that the plaintiffs, "* * * although able to do so, did not exercise their right to purchase the * * * real property prior to June 1, 1977, in reliance on the * * * verbal agreements * * *." The complaint also alleges that plaintiffs paid $7,000 for the option to purchase and under the terms of the written option they were to be credited, upon its timely exercise, with at least $5,000 of that payment against the purchase price of the land. Thus, under the allegations of the complaint, the plaintiffs would be able to offer evidence to prove (1) the waiver—defendant's representation that he would permit plaintiffs to exercise the option at any time to and including January 1, 1978, (2) the reliance—that they reasonably relied on that representation, and (3) the damage—that they would be injured as a consequence of that reliance if defendant were permitted to insist on the expiration date provided in the written option.

■ ■      We are now convinced that the statute of frauds plays no independent role in the analysis of cases of this kind. When a party to a written contract asserts that the other party has waived the benefit of a contract provision under circumstances giving rise to an estoppel, the fact that the alleged waiver was in the form of an oral agreement may be significant on the issue of whether it was reasonable to rely on the waiver. It does not, however, raise the problem

the basis of an estoppel, the recovery of damages for breach of an oral agreement. No question of waiver was involved. The rationale we express in this opinion will not support the result in *Stevens,* but we need not determine at this time whether it was decided correctly.

of the enforcement of an oral contract contrary to the statute of frauds.[6]

### EFFECT OF REPUDIATION BY OPTIONOR

The next question is whether the complaint fails to state a cause of suit because it does not allege that the plaintiffs exercised the option, as orally modified, in accordance with its terms. The written option provided for its exercise by doing two things: (1) providing written notice either delivered "in hand" or mailed by certified mail to the owner at a given address; and (2) depositing $25,000 with a named title insurance company. The written option further provides that both the time and the manner of exercising the option are of the essence. The alleged oral modification extended the time for exercise, but did not alter the provisions as to the manner in which it was to be accomplished.

The relevant allegations of the complaint are:

"Plaintiffs have been and now are ready to exercise the above option contract and so notified the defendant by written letter received by defendant prior to January 1, 1978.

"Defendant, prior to January 1, 1978, repudiated the above option contract and indicated that tender of payment would be refused."

Plaintiffs' complaint was filed on January 18, 1978.

Defendant claims that the allegation of repudiation is irrelevant, and that the complaint does not state a cause of suit because it does not allege that the option was exercised in the manner provided by its terms. Plaintiffs' position is that formal exercise of the

_____

[6] In the trial court and the Court of Appeals defendant also urged that the complaint did not adequately allege consideration for the oral modification agreement. He did not make that contention in his petition for review, but the question was discussed at some length at oral argument. As the above discussion indicates, it is not important to our decision whether the oral extension was given for adequate consideration. It is the representation inherent in the alleged agreement which is significant; if there was such a representation it is not important whether it was made in return for consideration which would support a contract. *See Neppach v. Or. & Cal. R. R. Co.*, 46 Or 374, 80 P 482 (1905). But *cf. Scott v. Hubbard*, 67 Or 498, 506-507, 136 P 653 (1913). Estoppel does not require consideration. *Steiner, Inc. v. Hill*, 191 Or 391, 397, 226 P2d 307, 230 P2d 537 (1951).

option in accordance with its terms was not a condition precedent to this suit because defendant repudiated the option before the final date for its exercise.

In other contexts we have held that the tender of performance which is ordinarily necessary before bringing a suit or action is excused if the other party has made it clear that the tender would be refused. *See, e.g., Temple Enterprises v. Combs*, 164 Or 133, 153-54, 100 P2d 613, 128 ALR 856 (1940) (lease repudiated by lessor); *Tortora v. Wyatt*, 125 Or 240, 243-44, 266 P 251 (1928) (agreement to exchange land); *Guillaume v. K. S. D. Land Co.*, 48 Or 400, 405, 86 P 883 (1906), 88 P 586 (1907) (land sale contract). *See also, Wittick v. Miles*, 268 Or 451, 521 P2d 349 (1974) (land sale contract repudiated by vendor; vendee in possession). In two cases involving options which were to be exercised by payment we have suggested, but have not held, that a similar rule applies. *Clarno v. Grayson*, 30 Or 111, 126, 46 P 426 (1896); *Leadbetter v. Price*, 103 Or 222, 236, 202 P 104 (1922).

Defendant relies on the *Leadbetter* case, but we do not believe it supports his position. In that case the decisive flaw in the optionee's case was that although the option could only be exercised by payment, the optionee asked the court to decree that he had up to an additional year to pay. That was clearly an attempt to vary the terms of the option agreement rather than to enforce them.

At best, our precedents involving options are inconclusive. Other authorities state the law in language favorable to plaintiffs' position, but there appears to be little direct support in the cases. Corbin, in discussing whether repudiation excuses a tender of performance, states:

> "Where a valid option contract for the purchase of land has been made and the option giver serves notice of his repudiation on the option holder, the latter can maintain a suit for specific performance without giving any formal notice of acceptance or making a

tender of the price." 4 Corbin on Contracts 923-24, § 977 (1951).

In the option cases in the notes to that section, suit was apparently brought before the time for exercise of the option had expired. The opinions do not state whether the result would have been the same had the suit been filed, like this one, after the time for exercise had run.[7]

In an annotation entitled "When Optionee's Delay in Exercising Option Excused," 157 ALR 1311 (1945), the following is said to be the general rule:

> "* * * where the exercise of an option contemplates tender of the purchase price as a part of the acceptance, repudiation of the contract by the optionor, in the face of readiness, willingness, and ability to conform on the part of the optionee, excuses tender during the time limited, and entitles the latter to all available remedies, including specific performance." 157 ALR at 1325-326.

However, of the many cases cited in the annotation and the supplements, only a few stand directly for that proposition. *See, e.g., In re Estate of Wurtz*, 214 Kan 434, 520 P2d 1308, 1313 (1974); *Cooper v. Mayer*, 312 SW2d 127 (Mo 1958); *Winslow v. Dundom*, 46 Mont 71, 125 P 136, 139-40 (1912).

■    In spite of the lack of definitive support in the cases, we think the rule as stated in 157 ALR at 1325-1326 is correct in principle. An option like that before us is a conditional contract to sell; the optionor, in return for consideration furnished by the optionee, promises to sell the property on specified terms if the optionee chooses to buy and exercises the option in the manner agreed upon. See 1A Corbin on Contracts 495, § 262 (1963). It is a general rule of contract law that performance of a condition is excused when the

---

[7] *Scholle v. Cuban-Venezuelan Oil Voting Trust*, 285 F2d 318 (2d Cir 1960); *Bonde v. Weber*, 6 Ill 2d 365, 128 NE2d 883 (1955); *Nichols v. Sanborn*, 320 Mass 436, 70 NE2d 1 (1946). *See also Country Club Oil Co. v. Lee*, 239 Minn 148, 58 NW2d 247 (1953) (option was apparently exercised by notice before time had expired; tender of further performance held excused by optionor's repudiation).

party's failure to perform is the result of the other party's repudiation of his obligations under the contract:

> "Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise * * *." Restatement, Contracts § 306.

Comment *c.* to this section states:

> "In case of a suit for specific performance a plaintiff is often allowed to maintain his suit without preliminary performance or tender, an allegation in the bill or the complaint that the plaintiff is ready and willing to perform being treated as a substitute for actual performance or tender (see §§ 374-375)."

Pomeroy, in his discussion of specific performance, states the following rule as being "settled":

> "* * * An actual tender by the plaintiff is unnecessary when, from the acts of the defendant or from the situation of the property it would be wholly nugatory. Thus if defendant has openly refused to perform, the plaintiff need not make a tender or demand; it is enough that he is ready and willing, and offers to perform in his pleading; * * *." 4 Pomeroy's Equity Jurisprudence 1051, § 1407a (5th ed 1941).

See also, 5 Williston on Contracts 344-349, § 699 (3d ed Jaeger 1961).

We see no reason not to apply the principle recognized by these authorities to a suit to enforce an option contract. It would serve no purpose to require an optionee to attempt, before bringing suit, a performance which the optionor has already indicated will not be accepted.

Defendant urges us to follow the reasoning in *Clark v. Muirhead*, 245 Mich 49, 222 NW 79 (1928), which, he contends, stands for a contrary rule where an option is involved. The option in that case was to be exercised by written acceptance before a certain date.

Before that date, the optionee on several occasions offered to pay the purchase price to the optionors who refused to take the money because, they said, they "didn't want to sell the farm." The optionee never provided a written acceptance of the option, but brought suit for specific performance. The Michigan Supreme Court held that the optionee was not entitled to relief because the optionor had no duty to sell until the option was exercised in the manner provided, and that the optionor's "naked refusal to perform" did not constitute either a waiver or an estoppel.

■    We need not decide whether we would follow that case on similar facts—where the exercise of the option could have been accomplished simply by giving written notice.[8] We hold only that when payment of money is required in order to exercise the option, an optionor who has stated that he will refuse to accept the payment may not insist that the optionee nevertheless complete the financing or other arrangements necessary to obtain the money and make the futile gesture of offering to pay it.

In the case before us the plaintiffs have alleged that notice was given to the defendant within the time permitted by the option contract as modified and that they were "ready to exercise" it. Under this allegation they would be permitted to prove that they were both able and willing to deposit the money within the time allowed, and that they notified defendant that they were prepared to do so, thus to complete the steps necessary to exercise the option. They have also alleged that defendant indicated that if tender of payment were made it would be refused.

---

[8] The authorities we have cited above also suggest that exercise of an option by notice is not a prerequisite to suit if the optionor has repudiated. While there is no apparent distinction in logic between exercise by notice and exercise by payment, the burden of giving notice is not great and the optionee thus clearly indicates his intention to become bound to purchase. We need not decide in this case whether an optionee who has failed to exercise an option which may be exercised by notice alone may, after the expiration of the option period, enforce the agreement against an optionor who has repudiated.

■ It is true that plaintiffs did not allege that the written notice was either delivered "in hand" or sent by certified mail as provided in the written option. They did, however, allege that it was received by defendant within the option period as orally extended. This allegation is sufficient to permit proof of an adequate compliance with the notice provision. *See Nafstad v. Merchant*, 303 Minn 569, 228 NW2d 548, 550-51 (1975). *Cf. Albachten v. Miller*, 216 Or 379, 339 P2d 427 (1959).

■ Plaintiffs have also alleged that they are now ready to exercise the option. Although there is no direct offer, in so many words, to make payment immediately, this allegation is adequate to indicate plaintiffs' intention to be presently bound and their willingness and ability to perform the necessary steps to that end. *Compare Clarno v. Grayson, supra*, 30 Or at 143 (allegation that plaintiff is "ready, willing, and waiting to perform" not sufficient where balance of complaint showed that he was not willing to pay the purchase price), and *Leadbetter v. Price, supra*, 103 Or at 236 (institution of suit could not be treated as exercise of option where optionee prayed for additional time to perform).

What, then, of the 18-day delay in filing this suit? Because the optionee has bargained only for the right to elect to purchase during a limited time, he should not be allowed to take advantage of an anticipatory repudiation by the optionor to get more than he bargained for by extending that time. Failure to exercise the option followed by delay in bringing suit could have that result. Here, however, the suit was filed less than three weeks after the expiration of the option as allegedly modified, and we cannot say, merely from looking at the plaintiffs' complaint, that, as a matter of law, this demonstrates any undue delay by the plaintiffs.

■ We emphasize that this case comes to us on a pleading question which requires an answer to

but one question: Did the plaintiffs allege facts sufficient to state a cause of suit? In answering that question, we must assume the truth of all well-pleaded facts and give the plaintiff the benefit of the inferences that can properly and reasonably be drawn from those facts. *Lincoln Loan v. State Hwy. Comm.*, 274 Or 49, 52, 545 P2d 105 (1976). Applying this standard, we conclude that the complaint states a cause of suit for specific performance and that the Court of Appeals was correct in ruling that the demurrer should have been overruled.

The decision of the Court of Appeals is affirmed.