Argued and submitted October 18, reversed and
remanded December 29, 1982, reconsideration denied February 4,
petition for review denied March 22, 1983 (294 Or 613)

ALK et al,
*Appellants,*
*v.*
LANINI et al,
*Respondents.*

(No. 80-2842-NJ-2, CA A23633)

656 P2d 367

Walter D. Nunley, Medford, argued the cause and filed the brief for appellants.

William V. Deatherage, Medford, argued the cause for respondents. On the brief were John B. Rogers and Frohnmayer, Deatherage, deSchweinitz & Eads, Medford.

Before Gillette, Presiding Judge, and Warden and Young Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiffs appeal from a trial court decree denying them specific performance of an earnest money agreement on the ground that they failed to make a timely tender of the down payment. We reverse, because defendants' prior repudiation of the contract relieved plaintiffs of the duty to tender the money.

On October 14, 1978, plaintiff-purchasers and defendant-sellers entered into an agreement for the sale of 293 acres in Jackson County. The Deposit Receipt and Agreement of Sale stated that closing was to occur on December 15, 1978, and required sellers, after buyers' performance, to "deliver to buyer * * * a proper deed with * * * marketable title * * * free from all encumbrances * * *." The agreement also contained a time of the essence clause.

When defendants received the preliminary title report, they discovered for the first time that the title was clouded and not marketable. They retained an attorney and instructed him to proceed with a quiet title suit. When it became apparent that the title could not be cleared by December 15, 1978, plaintiffs and defendants signed an agreement to extend the closing date to June 15, 1979. In May, 1979, defendants terminated the first attorney's services and engaged another to proceed with the quiet title action. By this time, it was obvious that defendants' title would not be cleared in time for closing to occur on schedule. On June 6, 1979, the parties signed a second agreement to extend closing until October 15, 1979.

By late September, plaintiffs had concluded that the quiet title action probably would not be completed in time for the October 15 closing, so they sought yet another extension, this time until October, 1980. Plaintiffs signed such an extension agreement on September 26, 1979, while they were at a social gathering with defendants. Defendants refused to sign the agreement at that time, but plaintiffs understood their refusal to be solely because they considered a business transaction to be inappropriate at a social gathering. Other conversations at that gathering

concerned plaintiffs' plans for the property. Defendants did not suggest that the parties no longer had a "deal."[1]

On March 12, 1980, a decree was finally filed quieting title in defendants. Plaintiffs' attorney then attempted to proceed with the transaction, but he was informed by a letter from defendants' attorney that defendants no longer wished to sell. In August, after some additional correspondence between the two attorneys, plaintiffs paid the agreed down payment into escrow and filed this suit for specific performance. The trial judge found that defendants' obligation to sell the property to plaintiffs lasted at least through the time that the quiet title suit concluded, but he denied specific performance because he found that plaintiffs had not made a timely tender of their down payment. This appeal followed.

Defendants argue first that, because time was of the essence of the contract and because the parties had agreed to extend the closing only until October 15, 1979, the contract lapsed on that date, releasing defendants from all further obligations. We disagree.

As a general rule, a party to a contract may waive performance of any provision included for his benefit. *Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 547, 373 P2d 661 (1962); *Cross v. Campbell,* 173 Or 477, 493, 146 P2d 83 (1944). A provision making time of the essence may be waived either expressly or impliedly. *Widing et al v. Jensen, Real Estate Com., supra; Walker v. Feiring,* 53 Or App 433, 437, 632 P2d 1270 (1981); *Spaulding v. McCaige,* 47 Or App 129, 134, 614 P2d 594 (1980). By defendants' own admission, the time of the essence clause was included in the earnest money agreement for the benefit of both parties. It could therefore be waived by either party with regard to the timing of the other party's performance.[2] The earnest money agreement initially required defendants to deliver marketable title at the closing on December 15, 1978. With respect to defendants' performance, the clause was for

---

[1] The trial judge appears to have accepted plaintiffs' testimony on this point. We do.

[2] We recognize, of course, that plaintiffs' waiver of the time provision could not excuse their own timely performance.

plaintiffs' benefit, and plaintiffs' three requests for extensions of the closing date operated as waivers of the provision.

■ ■  Defendants' argument must also fail because a party to a contract cannot take advantage of his own failure to perform, *Hansen v. Bussman,* 287 Or 527, 534, 601 P2d 794 (1979); *Public Market Co. v. Portland,* 171 Or 522, 588, 130 P2d 624, 522, 138 P2d 916 (1942); *see also* 1 Corbin Contracts § 319, at 112-14 (1950), and defendants were responsible, at least in part, for the fact that the transaction did not close on schedule.

It did not close on the specified dates because defendants were unable to deliver marketable title. We realize that defendants had only a limited amount of control over the quiet title action. They did, however, have power over the actions of their attorney, and we do not think that they used that power as they could have to expedite resolution of the title question. When defendants hired the second attorney in June, 1979, he offered them a choice: he could put his other projects on the "back burner" and give defendants' quiet title action "full priority," charging them accordingly, or he could proceed with the quiet title work when he "had spare time" to do the research on occasions when other business brought him to the courthouse in Medford. He testified that defendants chose the latter arrangement, because "nobody was really in a big hurry about it and [defendants] wanted it done as cheaply as we could get it done. * * * [T]hey didn't want to spend * * * any more than they had to." At the time defendants made this decision, they knew from experience that their quiet title action could be time consuming and that the October 15 closing date was rapidly approaching. Nonetheless, they chose the slower alternative. By doing so, defendants became a cause, although not the sole cause, for the failure of performance on October 15, 1979. They therefore cannot rely on the passage of that date to release them from their agreement.

For both reasons discussed above, plaintiffs are not foreclosed from the remedy of specific performance simply because the agreed closing dates passed without performance by either party. We must therefore determine whether

the trial court correctly denied specific performance because plaintiffs did not make a timely tender of the down payment. The trial court stated:

"[I]t was incumbent upon buyers to tender the remaining down payment within a reasonable time after learning of the clear title and * * * a failure to make such a tender * * * would result in a forfeiture of buyers' right to demand specific performance * * *. It is this court's opinion that a delay from a date of March 25, 1980, to August 12, 1980, is not within a reasonable time and that such a delay precludes buyers from obtaining specific performance."

Plaintiffs point out that defendants "repudiated" the contract on three separate occasions after the quiet title decree was filed and argue that they were not required to tender the down payment because " 'Tender need not be made when the vendor has announced that he will not comply with his contract * * *.' " *McCarty v. Helbling,* 73 Or 356, 374, 144 P 499 (1914) *quoting* 38 Cyc. 702. The trial judge rejected this argument, because he "recalled" that plaintiffs either did not know that defendants would not proceed with the sale or assumed that they and defendants would be able to "work it out and go ahead with the sale."

■ ■ A purchaser need not tender performance in order to preserve his right to specific performance when the seller has repudiated the contract, or has otherwise indicated that tender would not be accepted. *Guillory Corp. v. Dussin Investment,* 272 Or 267, 275, 536 P2d 501 (1975)); *Anderson v. Wallowa National Bank,* 100 Or 679, 690, 198 P2d 560 (1921); 4 Pomeroy's Equity Jurisprudence, § 1407, 1051 (5th ed 1941); *see also Davidson v. Wyatt,* 289 Or 47, 609 P2d 1298 (1980). The trial judge correctly responded that a purchaser must know of the seller's repudiation in order for the purchaser's tender to be excused, but it appears from the record that he incorrectly recalled that plaintiffs lacked such knowledge. Defendants' attorney sent plaintiffs' attorney three separate letters, stating very clearly that defendants were no longer willing to sell the property. There is evidence that at least one of those letters was forwarded to plaintiffs by their attorney. We find the requisite knowledge. With regard to the rest of the trial court's recollection, we do not see why plaintiffs' hope that the sale might be salvaged should reinstate their obligation

to tender the down payment despite defendants' repudiation. We hold that plaintiffs were not required to make a useless tender of the down payment amount and that the absence of tender did not forfeit plaintiffs' right to demand specific performance.

Plaintiffs next assert that the trial court erred in refusing to consider evidence that defendants allowed timber to be cut and removed from the property after they had contracted to sell it to plaintiffs and that this had decreased the value of the land. The trial judge ruled as he did because plaintiffs' pleadings did not specifically request compensation for a loss of value. Plaintiffs made an offer of proof, however: Mr. Alk testified that 30 to 40 trees between 18 to 40 inches in diameter had been removed from the property between October, 1978 and September 26, 1979.

■ Assuming, without deciding, that the trial court's ruling was error, see *Caveny v. Asheim et al,* 202 Or 195, 218-20, 274 P2d 281 (1954), the error was harmless. Plaintiffs' offer of proof did not include evidence of the value of the timber removed or of the amount by which the removal decreased the value of the land. The evidence was therefore inadequate to support an award of damages. See *Polanski v. Polanski,* 193 Or 429, 238 P2d 739 (1951); *Powell v. Hartman,* 37 Or App 455, 587 P2d 506 (1978).

In summary, we hold that plaintiffs are entitled to specific performance of the earnest agreement but are not entitled to compensation for damages resulting from the removal of timber from the property.

Reversed and remanded with instructions to enter a decree of specific performance in favor of plaintiffs.