Argued and submitted July 19, affirmed December 18, 1985

LEE et al,
*Respondents,*

*v.*

THUNDER DEVELOPMENT, INC.,
*Appellant.*

(A8205-02864; CA A32192)

711 P2d 978

Rick T. Haselton, Portland, argued the cause for appellant. With him on the briefs were David H. Lohman and Lindsay, Hart, Neil & Weigler, Portland.

William Dickas, Portland, argued the cause for respondents. With him on the brief was Kell, Alterman & Runstein, Portland.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action for restitution of the amounts paid to defendant by plaintiffs for an option to purchase condominium units. Judgment for plaintiffs was entered by the trial court, and defendant appeals. We affirm.

In the spring of 1980, plaintiffs and defendant entered into a one year option for the purchase of condominums being built by defendant. The option was to expire on April 15, 1981. The terms of the option required that plaintiffs give defendant written notice of their exercise of the option, with closing to follow at least 15 days, but no longer than 30 days, after exercise. In no event was the closing to occur later than May 1, 1981.

Although the units were ready for occupancy at the time when the option agreement was executed, attached garages that defendant had agreed to build were not yet constructed. As the expiration date of the option agreement approached, the garages remained unbuilt due to wet weather and other commitments requiring defendant's attention. The parties orally agreed to extend the closing date to allow time for the completion of the garages, which occurred in mid-June, 1981.

Although the option agreement referred to the units as condominiums, the project had still not been dedicated as such by the summer of 1981. Defendant preferred to delay dedication until the last possible moment for tax purposes. Following an April 15, 1981, meeting between the parties concerning the progress of the transaction, including the status of the project as a condominium development, plaintiffs retained an attorney to protect their interests.

The attorney began working with defendant's counsel to expedite the closing of the transaction. By June 15, 1981, defendant had placed the necessary documents for executing the condominium dedication, along with closing instructions, in escrow. On that same date, defendant informed plaintiffs that their option had expired on April 15, 1981, but that they could still purchase the units "by complying with the conditions contained in the enclosed escrow instructions," which required that plaintiffs deposit the balance of their down payment into escrow.

Plaintiffs disagreed with defendant's characterization of the situation and protested defendant's introduction of what they believed were new and different conditions into the transaction. Plaintiffs also made known their concern arising from a preliminary title report they had received, which revealed that the entire project was encumbered by a trust deed securing a $1,500,000 loan. The lender's release commitment expressly conditioned individual unit releases on the sale of a minimum of 33 units. By June 15, only nine units had been sold, and defendant had no prospective purchasers and was no longer actively marketing the units as condominiums. Given these circumstances, plaintiffs were legitimately concerned over whether defendant could convey clear title.

Plaintiffs informed defendant that the release commitment did not comply with the terms of their sale agreement, which contemplated defendant's conveying clear title. Defendant ignored plaintiffs' concerns; no other release commitment from the lender was ever included in the closing documents. Faced with defendant's apparent unwillingness or inability to convey clear title, plaintiffs rescinded their agreement with defendant and sued for the return of the money they had paid for the option. A trial resulted in a judgment of restitution to plaintiffs. This appeal followed.

On appeal, defendant stresses two points which, it argues, justify reversal of the trial court's judgment. First, it contends that the extension of the closing date—beyond May 1, 1981—did not alter the terms of the option agreement, which required that written notice be given of plaintiffs' exercise of the option. Plaintiffs never gave notice. Secondly, defendant asserts that no conduct on its part excused plaintiffs from exercising the option pursuant to its terms. We consider the issues in that order.

■      There is substantial evidence in the record indicating that both parties were aware that the garages being built for plaintiffs' units would not be finished before the April 15, 1981, expiration date of the option. The parties orally agreed to extend the expiration date until the units were complete, which occurred some time later that summer. The trial court correctly concluded that the option had not expired by its own terms in April, 1981. We agree with defendant that the

extension of the deadline did not otherwise change the conditions of the option.

This brings us to defendant's second point—that no conduct on its part excused plaintiffs from exercising the option by a written notice and that, without a written notice, defendant had no duty to proceed and plaintiffs are therefore not entitled to restitution. The trial court apparently found that, at the time of plaintiffs' rescission of the transaction, defendant was unable to close in accordance with the terms of the agreement, regardless of whether written notice was given by plaintiffs and that defendant had thus repudiated the contract, thereby entitling plaintiffs to restitution. We agree with that finding.

The record also contains evidence that plaintiffs demanded that defendant provide an appropriate release agreement assuring them of clear title, that the demand was ignored, that no other release agreement was ever presented and that defendant continued to insist that plaintiffs close the transaction under the terms demanded by defendant. The only contradictory evidence came from defendant's president, who claimed alternatively that the release agreement was negotiable with the lender or that the project could have been refinanced. Even those minimal assurances were not given to plaintiffs in June, 1981. Plaintiffs' concerns were ignored, and defendant insisted that they close under the terms demanded in the June 15 letter from defendant to plaintiffs. The court correctly found that defendant had repudiated the original option contract, excusing plaintiffs from proceeding further.

We said in *Alk v. Lanini,* 61 Or App 158, 163, 656 P2d 367 (1982) rev den 294 Or 613 (1983)—an action for specific performance—that a "purchaser need not tender performance in order to preserve his right to specific performance when the seller has repudiated the contract, or has otherwise indicated that tender would not be accepted." Defendant notes that a repudiation must be unequivocal and claims that an express repudiation was never made. A repudiation can be unequivocal, however, without an express declaration: "An actual tender by the plaintiff is unnecessary when, from the acts of the defendant or from the situation of the property it would be wholly nugatory." 4 *Pomeroy's Equity Jurisprudence* 1051, sec. 1407a (5th ed 1941), *cited in Davidson v. Wyatt,* 289 Or 47,

61, 609 P2d 1298 (1980);[1] *see also* 17A CJS 68, *Contracts,* § 481 ("A tender is not required where the other party has placed it beyond his power to perform, or has shown or indicated that he will not or cannot perform"). Whether or not an unequivocal repudiation occurred is a question of fact. We agree with the court's finding that defendant unequivocally repudiated.

Affirmed.

---

[1] In *Davidson v. Wyatt, supra,* the court considered the distinction between an option which required the tender of money for its exercise and an option requiring only that notice be given for its exercise. The court also considered the applicability to each kind of option of the rule excusing tender in the face of repudiation. While declining to make a ruling on the issue, the court recognized no logical distinction between exercise by notice and exercise by payment, but it did note that the burden of giving notice is not great. Given the facts of the case before us, we see no reason to give disparate treatment to an option contract because of the anticipated manner of its exercise. We also note that, in this case, defendant expected plaintiffs to deposit their down payment into escrow and to accept an inadequate unit release agreement. These circumstances placed a significantly greater burden on plaintiffs than merely giving notice.