**J.T. WRIGHT, Lillie Florence Dittfurth, Johnnie J. Wright, III, Margaret Wright Barlow, David W. Wright and Allen B. Wright, Plaintiffs–Appellees.**

v.

**Jimmy G. WRIGHT, Executor of the Estate of Gusta W. Wright, Deceased, Jimmy G. Wright, Individually and Jere L. Wright, Defendants–Appellants.**

Court of Appeals of Tennessee,
Western Section,
at Nashville.

Sept. 18, 1991.

Permission to Appeal Denied by
Supreme Court March 16, 1992.

William L. Harbison, Nashville, for defendants-appellants.

Dale Bohannon, Cookeville, for plaintiffs-appellees.

CRAWFORD, Judge.

This is a breach of contract case involving a contract to make a will.

The facts in this case are virtually undisputed. J.J. Wright (hereinafter Mr. Wright) and Gusta Wilmoth Wright (hereinafter Mrs. Wright) were married in 1934. At the time, Mr. Wright had three children by a former marriage, J.T. Wright, Lillie Florence Wright (now Dittfurth) and Johnnie J. Wright, Jr. Subsequently, the couple produced two children, Jimmie G. Wright and Jere C. Wright.

In 1960, Mr. and Mrs. Wright executed a contract (hereinafter Contract) the stated purpose of which was to control the disposition of property owned by the survivor of the two parties at the time of his or her death. The Contract provided inter alia as follows:

[A] each of us agrees with the other that the following children, Lillie Florence Wright Burgess, J.T. Wright, Johnnie J. Wright, Jr., Jimmie G. Wright and Jerry L. Wright shall share equally in all the property real, personal and or mixed, wherever located, that the survivor of us shall leave and have at the time of his or her death, and we agree with each other that we will make and execute such instrument or instruments that shall be proper for carrying out the full purpose of this agreement between us.

\*   \*   \*   \*   \*   \*

[B] It is further agreed and understood between us that either of us may use his or her property as he deems necessary and proper during his natural lifetime, so as to make himself or herself comfortable; but it is agreed and understood that neither of us will transfer or convey any property, goods or assets, to anyone of the said children or to any other person or persons, so as to favor one of the said named five children over and above any other of the said children.

Mr. Wright executed two wills subsequent to the Contract: the first in 1962 and the second in 1968. Mr. Wright died in the spring of 1971 and his 1968 will was probated without contest. Mrs. Wright also executed two wills subsequent to the Contract: the first in 1962 and the second in 1971 after Mr. Wright's death. Her first will complied with the Contract but the second will left all of Mrs. Wright's property to her two children, Jimmie G. Wright and Jere L. Wright. When Mrs. Wright died in 1986, the 1971 will was offered for probate. The disposition of property pursuant to the terms of this will precipitated the instant suit filed by plaintiffs, J.T. Wright, Lillie Florence Dittfurth, Johnnie J. Wright, III, Margaret Wright Barlow, David W. Wright and Allen B. Wright[1] against Jimmy G. Wright, individually and as Executor of the Estate of Gusta W. Wright, deceased, and Jere L. Wright.

---

1. Johnnie J. Wright, III, Margaret Wright Barlow, David W. Wright and Allen B. Wright are the children of Johnnie J. Wright, Jr., deceased.

The present suit is the fourth between these parties or predecessors in interest. In the first suit, filed in 1978, appellees alleged that Mrs. Wright had breached the Contract by conveying property to her son, Jimmie G. Wright, in violation of the Contract. A second suit was initiated by Mrs. Wright herself in 1980 seeking a declaratory judgment that the Contract be found null and void. The plaintiffs responded with a counterclaim again alleging that Mrs. Wright had breached the Contract by conveying property to her natural children. The plaintiffs then filed a third suit against Jimmie Wright and his wife, Joyce, in 1980 seeking an accounting because the son and daughter-in-law were handling Mrs. Wright's funds. Mrs. Wright herself was subsequently added to this suit by amendment.

Plaintiffs' voluntarily took nonsuits in the first and third actions. Mrs. Wright was declared incompetent in 1982 and her co-conservators, Jimmy and Jere Wright, voluntarily dismissed her declaratory judgment suit in 1984. There is some dispute as to the disposition of the plaintiffs' counterclaim to Mrs. Wright's suit, but that suit too was apparently dismissed voluntarily.

Mrs. Wright died in 1986, and her 1971 will was offered for probate on August 21, 1986. Plaintiffs/Appellees filed suit in February of 1987, alleging that the 1971 will breached the Contract by bequeathing all of Mrs. Wright's property to her two natural children. After presentation of proof and arguments below, the trial court found: (1) that the Contract was valid and existing at Mr. Wright's death, (2) that Mrs. Wright did not repudiate the Contract prior to her death and (3) that Mrs. Wright's will, offered for probate following her death, breached the Contract by bequeathing all of her property to her two natural children. Because of these findings, the court held that plaintiffs are not barred from bringing their present action and that they should recover sixty percent (60%) of the estate of Gusta Wright remaining at the time of her death. We affirm.

Although the appellants contend this case presents six issues on appeal, we perceive there to be only three dispositive issues for consideration: (1) whether the contract was still in effect at the time of Mr. Wright's death, (2) whether plaintiffs' claim should be barred by the six (6) year statute of limitations, T.C.A. § 28–3–109(a)(3) and (3) whether plaintiffs' claim should be barred by Tenn.R.Civ.P. 41.01(2).

The threshold issue before this Court must be whether the Contract was still in effect at Mr. Wright's death or whether either party to the agreement had withdrawn from it prior to his death.

Although Tennessee courts recognize the validity of contracts to make wills, they also recognize that while both parties to the agreement are still alive either "may recede therefrom and make a different disposition of his property on giving proper notice of his act in doing so." *Church of Christ Home For Aged v. Nashville Trust Co.,* 184 Tenn. 629, 636, 202 S.W.2d 178, 181 (1947). The Court in *Church of Christ Home For Aged* did not elaborate on what steps a party must take to unilaterally recede from a contract to make a will while both parties are still living, but this Court is persuaded by the general principles of contract law that such steps must, at a minimum, be equivalent to those required for mutual rescission. The Court in *Arkansas Dailies, Inc. v. Dan,* 36 Tenn.App. 663, 260 S.W.2d 200 (1953), held that such rescission "must be clearly expressed, and acts and conduct ... to be sufficient, must be positive, unequivocal, and inconsistent with the existing contract." 260 S.W.2d at 203.

There is nothing in the record that could reasonably be interpreted as effecting a rescission of the Contract. Appellants argue that Mr. Wright's 1968 will was such an act and that Mrs. Wright concurred in the provisions of this will—the implication being that the 1968 will effectively revoked the Contract and that Mrs. Wright assented to such a revocation or at least had notice of it. Leaving aside the question of Mrs. Wright's assent, no fair and complete reading of the document can

lead to the conclusion that the 1968 will was intended to repudiate the Contract. The Contract's purpose was to ensure that the survivor of the parties treated all of the children in the family equally. The only significant incongruity between the will and the Contract is Mr. Wright's bequest of certain property to Mrs. Wright, but such inconsistency is readily explained by the vast difference in the ages of the two parties and the resulting assumption by Mr. Wright that his wife would survive him. In any event, the bequest in no way favored one child over the other and thus did not represent an inconsistency with the Contract. In short, Mr. Wright's 1968 will does not prove that he intended to recede from the Contract.

The second issue is whether plaintiffs' cause of action for breach of contract to make a will should be barred by the six (6) year statute of limitations, T.C.A. § 28–3–109(a)(3).

■ The crucial factor in resolving the second issue is a determination of when appellees' cause of action accrued. With a contract to make a will, normally no right of action accrues until the death of the promisor without compliance with the agreement. C.J.S. *Wills*, § 125 (1956). The defendants contend, however, that the plaintiffs' cause of action accrued no later than 1978 when, in response to plaintiffs' breach of contract claim, Mrs. Wright allegedly repudiated the Contract by filing an answer which prayed for the court to find the Contract null and void. The trial court in the present suit held that such actions did not rise to the level of repudiation, finding instead that no repudiation occurred until Mrs. Wright's death. We agree.

■ In order to serve as an anticipatory breach of contract or repudiation, the words and conduct of the contracting party must amount to a total and unqualified refusal to perform the contract. *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135 (1911) and *Kentucky Home Mutual Life Ins. Co. v. Rogers*, 196 Tenn. 641, 270 S.W.2d 188 (1954). In the alternative, a party may breach a contract by committing a voluntary act which renders the party unable or apparently unable to perform the contract. *Restatement of Contracts 2d*, § 250, p. 272.

■ Whether the words and/or actions of the contracting party have risen to the level of repudiation is normally a question of fact to be determined by the trial court. *Mitchell v. Marklund*, 238 Cal.App.2d 398, 47 Cal.Rptr. 756 (1965); *Lee v. Thunder Development, Inc.*, 77 Or.App. 7, 711 P.2d 978 (1985). The appellants have presented the Court with no cases where mere assertions or prayers in pleadings have been held as a matter of law or found as a matter of fact to be a repudiation, nor has the Court uncovered such a precedent through its own research.

■ After reviewing the record, this Court is not prepared to hold as a matter of law or find as a matter of fact that Mrs. Wright through her pleadings in the previous suits gave the appellees clear and unequivocal notice of her intention not to perform the Contract. The Court notes that Mrs. Wright executed the will which gave rise to the instant case in 1971, shortly after Mr. Wright's death. In that will, she contradicted the Contract by bequeathing her entire estate to her two natural children. At no time, however, did Mrs. Wright inform her stepchildren of this will, not to mention its contents. In addition, when Mrs. Wright made an inter vivos transfer of property to one of her children which gave rise to a breach of contract action by appellees, instead of choosing that opportunity to repudiate the Contract, she denied that such actions were a breach of the Contract. Mrs. Wright merely asked the trial court to determine the Contract to be null and void.

■ Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We agree with the trial court's conclusion that such actions were not a repudiation. Mrs. Wright's pleadings in the 1980 suits between the parties are similarly ambivalent. Asking a court to declare a contract unenforceable is not equivalent to serving notice to concerned parties that the obligor refuses to be bound by the contract. We find, therefore, that the appellees' present cause of action for breach of contract should not be barred by the statute of limitations, T.C.A. § 28–3–109(a)(3).

■ The third issue is whether appellees' claim should be barred by Tenn. R.Civ.P. 41.01(2). Appellants argue that even if appellees' cause of action did not accrue until the death of Mrs. Wright, their action should nonetheless be barred by Tenn.R.Civ.P. 41.01(2) which provides in pertinent part:

> ... a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has twice dismissed in any court an action based on or including the same claim.

Appellees' three prior suits were all based on the inter vivos actions which Mrs. Wright took with regard to her property. The present claim, to the contrary, is founded on her testamentary actions. These claims are distinct and separate both in character and in time and should be governed not by 41.01(2) Tenn.R.Civ.P., but by T.C.A. § 20–6–201, which provides:

> Successive actions may be maintained on the same contract or transactions when ever *after* the former action, a new cause of action arises therefrom. (Emphasis added).

In *Matheny v. Preston Hotel Co.*, 140 Tenn. 41, 203 S.W. 327 (1918), the Tennessee Supreme Court, interpreting and applying an earlier codification of this statute, held:

> Where several breaches have already occurred at the time a suit is brought they must all be sued on in the same action, otherwise those omitted cannot be subsequently recovered on in another action, since the several breaches, after they

have occurred, ... constitute only one cause of action.

140 Tenn. at 48, 203 S.W. at 328.

Thus, since the appellees' cause of action did not arise until the death of Mrs. Wright, when she left a will which breached the Contract, the cause of action did not exist when the earlier suit was brought. We cannot conclude that this cause of action would be barred by 41.01(2) Tenn. R.Civ.P.

■ Appellants also argue that appellees' action should be barred by laches. This issue, however, is without merit, since the Court finds (1) that no cause of action for repudiation arose until Mrs. Wright's will was offered for probate on August 21, 1986 and (2) the appellees filed their suit in February, 1987.

The judgment of the trial court is affirmed and the case is remanded to the trial court for such other proceedings as may be necessary. Costs of the appeal are assessed against appellants.

TOMLIN, P.J. (W.S.), and LEWIS, J., concurs.