IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 14, 2020 Session

## ST. GEORGE HOLDINGS LLC v. JAMES D HUTCHERSON

**Appeal from the Circuit Court for Hamilton County**
**No. 19C185     Kyle E. Hedrick, Judge**

_____

### No. E2020-00082-COA-R3-CV

_____

This appeal concerns an option agreement.  St. George Holdings, LLC ("SGH"), an entity formed to purchase the old St. George Hotel ("the Hotel") in Chattanooga, entered into an agreement with James D. Hutcherson ("Hutcherson") under which SGH would borrow $700,000 from Hutcherson to develop the Hotel.  An option agreement, one of four documents executed in the transaction, provided that if SGH was unable to obtain a full development loan in 18 months, Hutcherson could purchase the Hotel for the amount of his loan.  SGH never obtained a development loan.  When Hutcherson attempted to exercise his right to purchase, SGH refused to comply.  Instead, SGH sued Hutcherson in the Circuit Court for Hamilton County ("the Trial Court").  Hutcherson filed a counterclaim.  The Trial Court granted summary judgment to Hutcherson on SGH's claims.  After trial on Hutcherson's counterclaim, the Trial Court granted him specific performance.  SGH appeals, arguing among other things, that a jury waiver provision in the deed of trust did not serve to waive its right to jury under the option agreement.  We hold, *inter alia*, that the deed of trust's separately-initialed jury waiver, broad in its language as to its scope across the transaction, was sufficient to waive the right to jury for actions arising out of the option agreement.  We affirm the judgment of the Trial Court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

William H. Horton, Chattanooga, Tennessee, and Garrett P. Swartwood, Knoxville, Tennessee, for the appellant, St. George Holdings, LLC.

Gary R. Patrick and Susie Lodico, Chattanooga, Tennessee, for the appellee, James D. Hutcherson.

# OPINION

## Background

Marta Alder ("Alder"), a former real estate agent from Florida and primary manager for SGH, had a dream of restoring the Hotel, a derelict structure across the street from the historic Chattanooga Choo-Choo train station. A 2004 fire had left the Hotel severely damaged. In 2012, most of the Hotel was demolished because of its unsafe condition. The original façade survived, albeit in very bad condition. In May 2013, SGH bought the Hotel from its then-owner, Craig Driver ("Driver"), for $245,000, and then bought an adjacent parcel for $10,000. These funds came from Alder and her family. Alder thereafter hired engineers, architects, and a hotel management consultant. Alder's efforts were expensive, and money was an issue if the Hotel were ever to be restored.

SGH needed investors. The former owner, Driver, referred Alder to Hutcherson, a local accountant. Alder presented her plans for the Hotel to Hutcherson. At this early stage, Hutcherson was enthusiastic. However, Hutcherson conveyed that he was not interested in being an investor, as such, but rather in making a bridge loan for the initial startup costs. Negotiations ensued, and a deal was struck. On June 8, 2017, SGH and Hutcherson executed four documents: a loan agreement, a promissory note, a deed of trust, and an option agreement. As a result, Hutcherson loaned SGH $700,000 to be repaid over 18 months, for which he would receive accrued interest on the loan and a loan fee at the end of the 18-month term. Under the option agreement, Hutcherson had the option to purchase the property if one of four scenarios occurred: (1) SGH defaulted; (2) SGH failed to close on a loan for the development of the project substantially compliant with the design plans Alder had shown Hutcherson by the end of the 18-month term; (3) an offer from a third party to buy the property; or (4) SGH were to propose a transfer of the property. The option agreement provided, as pertinent:

> WHEREAS, St. George is the owner of certain real property located in the City of Chattanooga, Hamilton County, Tennessee, with all improvements located thereon, being more particularly described in the attached <u>Exhibit A</u> (the "Property"); and
>
> WHEREAS, Hutcherson has loaned Seven Hundred Thousand Dollars ($700,000.00) to St. George pursuant to the terms of a Loan Agreement (the "Loan Agreement") and a Promissory Note (the "Promissory Note") and secured by a Deed of Trust pledging the Property (the "Deed of Trust"), all of even date herewith (the Loan Agreement, the Promissory Note and the Deed of Trust are collectively referred to herein as the "Loan Documents"); and

WHEREAS, Hutcherson desires to secure a right of first refusal and option to purchase the Property from St. George and St. George desires to grant such right of first refusal and option to Hutcherson;

NOW, THEREFORE, in consideration of the foregoing, and the mutual covenants and promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1. **Right of First Refusal and Option to Purchase**. In consideration of One Hundred Dollars ($100.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, St. George hereby grants to Hutcherson the exclusive right of first refusal and option to purchase the Property, together with all improvements, easements, and appurtenances thereto, subject to the terms and conditions of this Agreement.

***

(b) **Development Option**. In the event St. George (i) does not receive and close on a Development Loan on or before December 8, 2018, or (ii) receives and closes on a Development Loan on or before December 8, 2018 with Marta Alder ("Alder") failing to maintain a Majority Interest (defined herein) in St. George upon closing of the Development Loan, then St. George shall give written notice thereof to Hutcherson and Hutcherson shall have the option (the "Development Option") to purchase the Property. Hutcherson shall have the right to exercise the Development Option from December 9, 2018 through June 9, 2019 (the "Option Expiration Date"), pursuant to the terms and conditions of this Agreement. In the event Hutcherson exercises the Development Option, the purchase price of the Property shall be the Purchase Price. The Development Option shall be null and void and of no further legal force and effect on the earlier of (i) the Option Expiration Date, or (ii) the date St. George receives and closes on a Development Loan with Alder maintaining a Majority Interest in St. George upon closing of the Development Loan (if such closing occurs on or before December 8, 2018), unless Hutcherson has previously exercised the Development Option pursuant to the terms and conditions of this Agreement. The Development Option shall survive payment in full of the Promissory Note and satisfaction of all other obligations under the Loan Documents. For purposes of this Agreement, "Development Loan" shall mean development debt, tax credits or grant, and/or equity financing from a bank or banks (allowing for syndication of financing), other lending institutions or private parties in an amount sufficient to develop the Property into a hotel substantially following

the plans set forth in Exhibit B attached to the Loan Agreement, which financing, in the aggregate, shall close simultaneously….

In 2018, Alder determined that preserving the original façade was unfeasible and that it would need to be demolished. Hutcherson learned of this, and in May 2018, his attorney sent Alder a letter warning her that demolition of the façade without Hutcherson's consent would violate the deed of trust. The letter read as follows:

It has come to our attention that you have been exploring the possible demolition of the St. George Hotel structure located on the Property. We would like to remind you that any such action would be a violation of the Deed of Trust and Security Agreement between St. George Holdings, LLC and James D. Hutcherson dated June 3, 2017, and recorded June 21, 2017 in Book 11081, Page 292 in the Register's Office of Hamilton County, Tennessee (the "Deed of Trust"), including but not limited to Paragraph 5 of the Deed of Trust.

We suggest that a meeting be scheduled between you, Donnie Hutcherson and your respective attorneys to discuss the terms of the Deed of Trust and related loan documents and the expectations thereunder.

Please let us know when you and your attorney are available to meet regarding the above.

Paragraph 5 of the deed of trust, referenced in Hutcherson's letter as the provision forbidding demolition without his consent, states:

Grantor shall maintain the Property and any improvements now existing or which may be added in a good state of repair, and shall not permit or commit waste. Grantor shall make such repairs and replacements necessary to maintain the Property and the value thereof. Grantor shall not cause or allow demolition, removal or alteration of the Property or any improvements located thereon without prior written approval of Lender. Grantor will complete in a workmanlike manner any building or improvement which may constructed, altered or repaired and will pay when due all claims for labor and material and will not permit any lien of mechanics, materialmen or others to extend to the Property. Upon Grantor's breach or this covenant, Lender, may, at sole option, take possession of the Property and take such steps and expend such sums as may be required to complete any construction or repair on the Property, to maintain the Property, or to discharge any liens. Any such expenditures shall he added to and

-4-

included in the outstanding principal debt secured hereby. Such action by Lender shall not constitute a waiver of any other right, remedy or option hereunder.

Meanwhile, time passed, and SGH never obtained a development loan for any version of the Hotel's restoration. December 8, 2018 finally arrived. Despite Alder's efforts, SGH still had not obtained a development loan. Alder proposed an extension, which Hutcherson refused. Alder also proposed that Hutcherson allow SGH to pay off the loan and for Hutcherson to release his option rights. Hutcherson refused this, as well. Hutcherson thereafter attempted to exercise his option to purchase the property. In January 2019, SGH sued Hutcherson in the Trial Court seeking declaratory judgment that he was not entitled to exercise his option and instead was required to accept payment on the loan. Hutcherson filed a counterclaim for breach of contract. The parties later cross-filed motions for summary judgment. SGH raised a number of contractual defenses.

Among the evidence cited by SGH at the summary judgment stage in support of its contention that it could not obtain a development loan was the affidavit of Alina V. Mardesich, Senior VP of George Smith Partners in Los Angeles, California, a financing company. Mardesich stated, in part, as follows:

> 3. Ms. Alder approached George Smith Partners about obtaining financing and provided copies of all of documents regarding the existing loan with James Hutcherson. I reviewed all of these documents.
> 4. I am aware that Mr. Hutcherson took the position that any attempt to demolish the façade of the existing building would constitute a default under the loan documents.
> 5. I am also aware that Ms. Alder had undertaken plans for the hotel utilizing a duplicated façade. She had taken substantial steps necessary for the development of the property, which created value in the property. I understand that Mr. Hutcherson was unwilling to grant any extension for any financing opportunities
> 6. Mr. Hutcherson's assertion of an undefined right to approve or reject development plans for the property and assertion that demolition of the façade would constitute a default, along with the recorded rights against the property, precluded St. George from obtaining the necessary financing to repay the existing loan due to Hutchinson and obtain development financing for the property.
> 7. Based on my extensive experience in commercial real estate lending, 1 can state that no banking institution or private financing firm would loan funds to St. George Holdings, unless the property was delivered free and clear to the new lender and that such condition would not be

possible, regardless of a timely loan application, with the existing encumbrances in place as represented by the options of Mr. Hutcherson and his assertion of a default. No clear lender's title policy could have been issued due to the encumbrances, and no lender would have closed a loan secondary or subject to such options or rights by Mr. Hutcherson.

In September 2019, the Trial Court entered an order granting Hutcherson's motion for summary judgment. SGH's motion for summary judgment was denied. In granting Hutcherson's motion, the Trial Court stated, in part:

It is important to note that, during the entire term of the loan, no loan application was ever filed by Ms. Adler or St. George for development of the project. In fact, Ms. Adler testified concerning what had transpired by December 8, 2018 (the maturity date of the Development Option) at page 241 in her deposition taken May 9, 2019.

Q. Okay. As of December 2018, had you applied to obtain a franchise with any other leading hotels or obtain a flag?
A. No.
Q. As of December 2018, had you hired anyone with motel experience to manage the hotel?
A. No.
Q. Okay. As of December 2018, had you submitted a formal loan application with any financial institution to get a loan for the development of the property?
A. No. We weren't ready. We were still under the new -- under the new project.

***

There is no question that the parties understood that the development option was an important part of the consideration for the loan. Nevertheless, and as the pointed out [sic] in the new affidavit at paragraph 11, St. George did not secure final pricing to submit for purposes of a development loan until October of 2018. Ms. Adler further states at paragraph 11 that "... I could not get investors on board because of their concerns with the recorded options held by Defendant." Clearly, the options to which she refers included the Development Option. While paragraph 11 goes on to state her personal concern over a contention in a May 2018 letter ("I was concerned about the contention in the May 2018 letter...") there is no evidence before this Court

that the May 2018 letter was anything more than a restatement of the rights already existing pursuant to the contract documents, or in any way affected Plaintiff's ability to obtain a development loan. In fact, a part of Plaintiff's supplemental filing included an email from its legal counsel, Scott Maucere, which contradicts Ms. Adler's worry.[1] Exhibit B to the Supplemental Affidavit of Marta Adler contains an October 25, 2018 email from Scott Maucere of Maucere Law Group. In this email, attorney Maucere lays out his plan to "... a clear path to a fee simple acquisition." The plan at paragraph 3 provides that "Prior to 12/8 RHP closes and delivers to STG a letter of credit or other agreement (a) representing an obligation to finance hotel (b) funds dispersal contingent upon criteria being met (plans approved, drawings, permits, etc..." Then at paragraph 5 of the email, Maucere writes that "Upon presentations to Hutcherson prior to the closing on the financial commitment in 3 above, Hutcherson will be compelled to release the ROFR and Option to purchase...". In other words, the May letter in no way altered the contract documents or the position of the Plaintiff in obtaining financing. So long as the development funds were secured and Marta was 51% owner, Hutcherson would "be compelled to release" the Development Option.

***

Plaintiff has advanced several defenses to the contract documents. Plaintiff argues anticipatory breach, equitable estoppel, unconscionability, failure of consideration/lack of mutuality, and lack of mutual assent. The facts necessary for any of these defenses is simply not present. A contract was negotiated between sophisticated parties. Moreover, these parties were represented by attorneys as well as other advisers in negotiating the deal. Specifically, the development option and its significance in this loan transaction was discussed numerous times. Plaintiff, with full knowledge of the provision and its pitfalls, entered the agreement. The contract is not unconscionable. There was no repudiation or anticipatory breach attributable to the Defendant. There were no false representations or concealment of material facts calculated to convey the impression to Plaintiff by Defendant that the facts are otherwise than those which Defendant attempts to assert. In short, there are no disputed issues of material fact necessary to resolve the motion for summary judgment. The development option was valid, entered knowingly, and supported by adequate considerations. Summary Judgment is therefore appropriate.

---

[1] A worry about the impact a letter may possibly have in this instance is no evidence that the letter was an anticipatory breach, a repudiation, a proclamation of a loan default, or any other factual hindrance to a loan.

(Footnote in original).

Hutcherson filed a motion to alter or amend seeking clarification that all of SGH's claims were dismissed with prejudice and his counterclaim was not dismissed, while SGH filed a motion for interlocutory appeal. In October 2019, the Trial Court entered an order disposing of these motions. Hutcherson's motion was granted and SGH's was denied. SGH filed a motion to stay in the Trial Court and an application for extraordinary appeal with this Court, both of which were denied. In its October 2019 order, the Trial Court also determined that a jury waiver contained in the deed of trust applied to the entire transaction.

A bench trial was held on Hutcherson's counterclaim. In December 2019, the Trial Court entered its detailed memorandum opinion finding in favor of Hutcherson and granting specific performance. As relevant, the Trial Court concluded as follows:

> The Court has already analyzed the parties' transaction and found it to be free from unconscionability and every other potential defect that St. George has asserted. The contracts that the parties signed are also "clear" and "definite" in their terms, being the product of extensive negotiations among the parties, several advisors, and the attorneys for each of the parties. And, of course, the parties' contract also involves unique, one-of-a-kind real estate—the remaining structure of a historic hotel and the land upon which it sits.
>
> Likewise, St. George's breach of the parties' contracts—the loan, the promissory note, and the option agreement—is indisputable. St. George did not procure a development loan for its project in the 18 months it had to do so.
>
> The 18 months deadline is critical. With multiple advisors as well as the representation of an attorney — it was St. George who ultimately set the time needed to procure the development. While it is true that the initial time deadline to trigger the option was set at 12 months by Mr. Hutcherson, it was the St. George team who only asked for an additional six months noting that "12 months is potentially cutting it really close. I suggest 18 months" followed by the reply "good points Scott, especially no. 2. I would like to think we don't need 18 months <u>but the time to ask for it is now and not then</u>." (emphasis added) It is worthy to note that, Hutcherson did not "counter" the request for additional time.
>
> The Option Agreement gave Hutcherson the right to purchase the property if that closing on the development loan did not occur, and it is undisputed that St. George did not close on a development loan. Hutcherson indeed tried to exercise that right. St. George has refused to convey the hotel and is therefore in breach.

***

The Tennessee Court of Appeals has instructed that "equity *will decree* specific performance of a contract for sale of land, as a matter of course," in cases like this." But St. George argues that it will experience <u>undue</u> hardship if the Court awards specific performance and that damages are an adequate remedy for Hutcherson. The Court does not question that a hardship arises with an award of specific performance. Contracts may often produce harsh results — and the Court does not relish issuing an opinion that crushes the dreams of a kind and quite likable Marta Alder. But the question before the Court is not whether the result is harsh, but whether specific performance is the proper remedy under all of the facts of the case. And while the Court may have discretion in matters of specific performance, its discretion does not operate in a vacuum outside of general legal guidelines.

James D. Hutcherson had no interest in being an investor in the St. George project. He had no interest in granting a loan for the sole purpose of earning interest. To the contrary: his only interest in making the loan was to "...allow [him] the opportunity to develop the property..." in the event St. George did not. He negotiated for that option. He paid counsel to represent him in that option. He granted 50% again the term of the loan for that option. Finally, he risked a $700,000 loan for that option. The property is unique. It is an almost 100 year old structure. It is the site of the historic St. George Hotel. It is set almost directly across from the historic Chattanooga Choo Choo. While the result will certainly be harsh for Ms. Alder, it is simply a failed business venture for the plaintiff/counter-defendant, St. George Holdings, LLC. While the Court, if it could exercise discretion outside of general legal guidelines, may well prefer the beauty of the proposed hotel to a historically accurate restoration project resulting in beautiful office space, that is not a remedy available to the Court — and the Court is constrained to follow the law.

***

When granting Hutcherson's Motion for Summary Judgment, the Court acknowledged the parties' equal bargaining positions and full, mutual knowledge of the terms of their transaction:

> [This] contract was negotiated between sophisticated parties. Moreover, these parties were represented by attorneys as well as other advisers in negotiating the deal. Specifically, the development option and its significance in this loan transaction

-9-

was discussed numerous times. [St. George], *with full knowledge of the provision and its pitfalls*, entered the agreement.

The award of specific performance is consistent with this holding and the evidence presented at the trial on Hutcherson's Counterclaim. To deny Hutcherson this remedy would deprive him of the benefit of his bargain, particularly since the payment of interest and fees was not sufficient consideration for him to make this loan. St. George was not able to obtain a development loan but now seeks to avoid the very consequences and pitfalls it agreed to on the front end.

The Court hereby grants the remedy of specific performance and Orders St. George to execute a deed transferring the property at issue to Hutcherson.

(Footnotes omitted). SGH timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, SGH raises the following issues on appeal: 1) whether the Trial Court erred in granting summary judgment to Hutcherson with respect to SGH's claims of lack of meeting of the minds and consideration, unconscionability, anticipatory breach, equitable estoppel, and impossibility of performance or frustration of purpose; 2) whether the Trial Court erred in determining that SGH waived its right to a jury trial concerning the option agreement because of a jury waiver contained in the deed of trust; and, 3) whether the Trial Court erred in granting Hutcherson, without the benefit of a jury, specific performance for breach of the option agreement rather than awarding him damages.

We review herein both a trial's results (as to Hutcherson's claims) and a grant of summary judgment (as to SGH's claims). With respect to the former, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Regarding the standard of review on motions for summary judgment, our Supreme Court has instructed:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the

nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in granting summary judgment to Hutcherson with respect to SGH's claims of lack of meeting of the minds and consideration, unconscionability, anticipatory breach, equitable estoppel, and impossibility of performance or frustration of purpose. SGH argues, among other things, that Hutcherson's May 2018 letter asserting that any demolition of the façade would constitute a default despite an independent evaluation reflecting that the project could not proceed using the original façade thwarted its effort to obtain a development loan. Our Supreme Court has instructed as follows on how courts are to interpret contracts:

When we interpret a contract, our role is to ascertain the intention of the parties. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011); *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). The interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006).

\*\*\*

It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents. *See Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993); *see also Beasley v. Metro. Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146, 148 (1950). To hold otherwise would make contracts not " 'worth the paper on which they are written.' " *Beasley*, 229 S.W.2d at 148 (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875)).

-12-

*84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). It is not the role of courts to rewrite contracts for dissatisfied parties. "[I]t is an often-cited principle in this jurisdiction that '[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them.' " *Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007) (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)).

SGH argues that it is not merely dissatisfied, but rather has shown a number of valid contractual defenses, which we now review. Regarding the necessity of a "meeting of the minds" and sufficient consideration in the formation of a contract, our Supreme Court has stated:

> A contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted). In determining mutuality of assent, courts must apply an objective standard based upon the parties' manifestations. *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002).

*Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). With regard to unconscionability, this Court has stated:

> A contract will be found to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007) (citations and quotation marks omitted). SGH also invokes anticipatory breach. "In order to serve as an anticipatory breach of contract or repudiation, the words and conduct of the contracting party must amount to a total and unqualified refusal to perform the contract." *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991) (citing *Ky. Home Mut. Life Ins. Co. v. Rogers*, 196 Tenn. 641, 270 S.W.2d 188 (1954); *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135 (1911)). Continuing with its defenses, SGH raises the doctrine of equitable estoppel. The elements of equitable estoppel were set out by this Court in *Consumer Credit Union v. Hite*, 801 S.W.2d 822 (Tenn. Ct. App. 1990):

The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am.Jur.Estoppel Sec. 42, pp. 642-643.

*Id*. at 825 (quoting *Callahan v. Town of Middleton*, 292 S.W.2d 501, 508 (Tenn. Ct. App. 1954)). Finally, SGH invokes impossibility. "[F]ailure to perform a contract is excused if performance becomes impossible due to a cause not attributable to the non-performing party and the impossibility is 'not among the probable contingencies which a [person] of ordinary prudence should have foreseen and provided for.'" *Groner v. On-Site Grading, Inc.*, No. E1999-00219-COA-R3-CV, 2000 WL 502843, at *4 (Tenn. Ct. App. Apr. 28, 2000), *no appl. perm. appeal filed* (quoting *Wilson v. Page*, 325 S.W.2d 294, 298 (Tenn. Ct. App. 1958) (italics omitted)).

SGH's contention that the option agreement lacked the necessary meeting of the minds or consideration is unsupported by the record. The parties' transaction consisted of four documents all executed on the same day toward the same end, pursuant to which Hutcherson was required to lend SGH $700,000 and SGH was required to grant Hutcherson an option agreement and repay him with interest after 18 months. There is no suggestion let alone any genuine dispute that SGH, a sophisticated party that was represented by counsel, was misled or ignorant of the terms of any provision in their various signed documents. Together, these facts reflect mutual assent, consideration, and a meeting of the minds. In other words, this was an agreement entered into voluntarily that obligated both sides. We do not find the option agreement unconscionable, either, as its terms do not shock the judgment of a person of common sense or contain terms so oppressive that no reasonable person would make them on one hand and no honest and fair person would accept them on the other. Rather, the development option at issue reflects the product of negotiations by sophisticated, represented parties. There is nothing inherently shocking or oppressive about tying an option to purchase to the other party obtaining a development loan. With respect to anticipatory breach, the record contains no evidence that Hutcherson ever signaled an unqualified refusal to perform. Hutcherson's May 2018 letter to Alder correctly pointed out that a provision in the deed of trust forbade demolition of the property without his consent. The letter was not an unqualified manifestation of an intent to breach

the parties' contract; it was an admonition to adhere to it. SGH's invocation of the doctrine of equitable estoppel is similarly misplaced, as SGH fails to identify a misrepresentation made by Hutcherson upon which it relied. Lastly, SGH's assertion of impossibility or frustration of purpose is undermined by the fact that failure to obtain a development loan was envisioned as a possible outcome by the very terms of the option agreement itself; it was an entirely foreseen contingency that came to pass. We find no genuine issue as to any material fact that would necessitate a trial on these claims. We affirm the Trial Court in its granting summary judgment to Hutcherson with respect to SGH's claims.

We next address whether the Trial Court erred in determining that SGH waived its right to a jury trial concerning the option agreement because of a jury waiver contained in the deed of trust. The separately-initialed provision at issue in the deed of trust reads as follows:

**34.     WAIVER OF JURY TRIAL**
**          EACH AND EVERY PARTY HERETO EXPRESSLY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS TRANSACTION, OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED (OR WHICH MAY BE DELIVERED IN THE FUTURE) IN CONNECTION HEREWITH, OR ARISING FROM ANY LENDERING RELATIONSHIP BETWEEN THE PARTIES HERETO.**

(All capital letters and bold text in original). However, to show that this provision does not apply to the option agreement, SGH points to Section 10(h) of the option agreement, which states: "**Loan Documents**. The rights and obligations of the parties under this Agreement are independent of the rights and obligations of the parties under the Loan Documents, and the provisions of this Agreement do not affect the rights and obligations of the parties under the Loan Documents." SGH also points to a mandatory arbitration clause in the option agreement, which neither party used. SGH argues that there is no reason to have a jury waiver in the deed of trust applicable to the option agreement if disputes under the option agreement are to be resolved by means of arbitration.

Courts have held that, to be enforceable, a jury waiver must be "knowing, voluntary, and intelligent." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 783 (Tenn. Ct. App. 2010). In *Poole*, the court found a valid jury waiver where three separate contracts contained jury waiver provisions and two of the contracts were only two pages long. *Id*. at 785. The *Poole* court stated: "Mr. Poole had a duty under the law and the contracts to read

and understand their provisions, which included three separate jury-waivers.  Under the circumstances, we find sufficient reason to impute knowledge of the jury-waiver provisions at issue to Mr. Poole, which he has not disputed." *Id*.  However, in another case, this Court declined to find that an arbitration provision extended across a transaction where the arbitration provision was not contained in or incorporated into the document at issue:

> There is no dispute that the Unit Purchase Agreements are themselves devoid of any specific arbitration provisions.  Yet, the trial court concluded that an agreement to arbitrate had been incorporated into those agreements by virtue of a provision that provided as follows: "By purchasing the herein contemplated Units, Purchaser agrees to be subject to and bound by the terms, conditions, provisions and limitations of this Agreement, as well as the Operating Agreement of D1 Sports Training of Baltimore, LLC."… [H]owever, we are of the opinion that there is insufficient language to incorporate the arbitration provision of the Operating Agreement into the Unit Purchase Agreements.  Again, the purchase agreements do not provide that the terms of the Operating Agreement are incorporated into them, nor do the purchase agreements specify that the purchasers are bound by additional terms as if set forth therein.  The purchase agreements simply include the obligation to be bound by a separate agreement, and there is insufficient language included to reach the conclusion that the Operating Agreement is to be considered a part of the purchase agreements.  In other words, although the signatory purchaser is deemed to be "subject to" and "bound by" the Operating Agreement by dint of the purchaser's decision and agreement to buy membership interests in D1 Baltimore, the purchase agreements do not say that *they*, the purchase agreements, are actually subject to such additional terms.

*Melo Enterprises, LLC v. D1 Sports Holdings, LLC*, No. M2017-02294-COA-R3-CV, 2019 WL 338941, at *4-5 (Tenn. Ct. App. Jan. 25, 2019), *no appl. perm. appeal filed* (footnotes omitted, emphasis in original).

SGH contends that the option agreement represented a separate, independent transaction from the other documents, and that the jury waiver in the deed of trust had no effect on the option agreement.  According to SGH, the deed of trust related only to the separate loan of money secured by interests in property.  However, the language in the jury waiver is quite broad and covers "any matter whatsoever arising out of or in any way connected with this transaction, or under any amendment, instrument, document or agreement delivered (or which may be delivered in the future) in connection herewith, or arising from any lendering relationship between the parties hereto."  While "transaction" is not defined, Hutcherson and SGH executed four documents between them on the same

date, June 8, 2017. Each document in this quartet constitutes part of the same overall transaction: Hutcherson's loan to SGH of $700,000. The option agreement component of this transaction was like the other three documents—a product of negotiations between sophisticated parties represented by counsel. The jury waiver language contained in the deed of trust is extremely broad and includes any documents "in connection herewith." That includes the option agreement, which clearly is connected as a document "arising from any lendering relationship between" Hutcherson and SGH. That the option agreement contains an arbitration provision does not negate this sweeping, unequivocal language of the jury waiver, which was initialed separately. SGH's waiver of a right to jury was made knowingly, voluntarily, and intelligently. We affirm the Trial Court in its determination that SGH waived its right to a jury trial.

The third and final issue we address is whether the Trial Court erred in granting Hutcherson, without the benefit of a jury, specific performance for breach of the option agreement rather than awarding him damages. Regarding our standard of review concerning a trial court's grant of specific performance and the preference under Tennessee law toward application of that remedy to matters of real property generally, this Court has stated:

> The question of whether a contract should be specifically performed depends upon the facts of each case, and is a matter addressed to the sound discretion of the trial court. *Hillard v. Franklin*, 41 S.W.3d 106, 111 (Tenn. Ct. App. 2000). Specific performance is only appropriate where the contract is clear, definite, and free from any suspicion of fraud or unfairness. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979).

> However, our courts have long recognized the preference for specific performance when dealing with contracts for the conveyance of real property, "because real property is unique, and more often than not, an award of damages is simply not an adequate remedy." *GRW Enterprises, Inc.*, 797 S.W.2d at 614; *see also Shuptrine*, 597 S.W.2d at 730; *McGaugh v. Galbreath*, 996 S.W.2d 186, 191 (Tenn. Ct. App. 1998). Because of the unique nature of real property, this court has given its approval to the proposition that "equity will decree specific performance of a contract for sale of land, as a matter of course, in the absence of any valid objection, where the contract is valid." *Brister v. Brubaker's Estate*, 336 S.W.2d 326, 332 (Tenn. Ct. App. 1960).

*Smith v. Smith*, No. M2004-00257-COA-R3-CV, 2005 WL 3132370, at *10 (Tenn. Ct. App. Nov. 22, 2005), *no appl. perm. appeal filed*. [R]eviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal

standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008) (citations omitted). The applicable standard is thus quite deferential.

SGH contends that the Trial Court's grant of specific performance to Hutcherson was unjust and unduly harsh because of the significant time and funds it put into its effort to restore the Hotel. SGH states that Hutcherson stands to reap a windfall from specific performance, giving him the benefit of SGH and Alder's acquisition of development plans and designs, environmental surveys, rezoning, investments, and other fruits of their efforts. SGH argues further that the Hotel is not "unique" to Hutcherson, as he has mentioned possibly converting it into an office building. SGH states that in contrast, the Hotel was Alder's dream project. SGH also states that the option agreement itself did not contemplate specific performance.

The Trial Court, in its discretion, determined that granting specific performance to Hutcherson was an appropriate remedy given that failure to do so would "deprive him of the benefit of his bargain." The Trial Court reasoned further that "St. George was not able to obtain a development loan but now seeks to avoid the very consequences and pitfalls it agreed to on the front end." The Trial Court correctly applied Tennessee law reflecting that specific performance is favored in cases involving real property. The Trial Court further correctly stated that the contract "was negotiated between sophisticated parties," parties that were "represented by attorneys as well as other advisers in negotiating the deal." In its findings regarding specific performance, the Trial Court did not apply an incorrect legal standard; did not reach an illogical conclusion; and did not base its decision on a clearly erroneous assessment of the evidence. Notwithstanding SGH's arguments, we do not find that the Trial Court employed reasoning that caused an injustice to SGH either. SGH, represented by counsel, was a sophisticated party to a business transaction and knew the risks it was undertaking. One such risk was that it might fail to obtain a development loan, which would result in Hutcherson having the option to purchase the Hotel. That risk, which was envisioned by and built into the contract itself, became reality. With all due respect to the significant efforts of SGH, and Alder, in particular, specific performance is not unduly harsh; this was simply a business deal gone badly for SGH, and now Hutcherson is entitled to the benefit of his bargain—namely, ownership of the Hotel, SGH having failed to obtain a development loan by December 8, 2018. Money damages would be an inferior substitute for what Hutcherson actually bargained for. We find no abuse of discretion in the Trial Court's decision to grant specific performance to Hutcherson. We affirm the judgment of the Trial Court in its entirety.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, St. George Holdings, LLC, and its surety, of any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE