IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2025 Session

## JULIE BUHLER, ET AL., v. LEFKOVITZ & LEFKOVITZ, PLLC

**Appeal from the Circuit Court for Davidson County**
**No. 23C1031      Lynne T. Ingram, Judge**

_____

### No. M2025-00210-COA-R3-CV

_____

This is a legal malpractice action that arises from alleged acts or omissions committed by attorney Steven L. Lefkovitz of Lefkovitz & Lefkovitz, PLLC, ("Defendant") while representing Julie Buhler in a real estate dispute with Richard and Ellen Davis ("Sellers") under an installment sales contract. The trial court summarily dismissed the legal malpractice action on the ground that two essential elements of a legal malpractice claim were not proven, specifically that "Plaintiff has failed to prove that Mr. Lefkovitz's conduct was the cause-in-fact of her damages," and "Plaintiff has not shown that Mr. Lefkovitz's conduct was the proximate cause of her damages." This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellants, Julie Buhler and David G. Rogers, as Trustee of the bankruptcy estate for Julie Buhler.

R. Dale Bay and Olivia D. Winnett, Nashville, Tennessee, and Jason H. Long, Knoxville, Tennessee, for the appellee Lefkovitz & Lefkovitz, PLLC.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Pursuant to a written agreement entitled Installment Sales Agreement[1] dated October 11, 2016 (the "Contract"), Ms. Buhler agreed to purchase from Sellers residential real property located at 107 McGavock Pike in Nashville, Tennessee (the "Property").

_____

[1] The Installment Sales Agreement was secured by a promissory note. The note is not at issue in this appeal.

Among other things, the Contract required Ms. Buhler to remit a $30,000 down payment, followed by 36 monthly installments until December 31, 2019, the initial maturity date, at which time a balloon payment of $330,000 was due. After remitting the downpayment, Ms. Buhler took possession of the property which she used as her personal residence and as a short-term vacation rental property.

Ms. Buhler remitted the monthly installments from November 2016 to December 2019. However, when Ms. Buhler could not make the balloon payment due December 31, 2019, she requested and obtained from Sellers a written amendment to the Contract extending the due date to December 31, 2020. After receiving the extension, Ms. Buhler continued to remit the required monthly payments; however, Ms. Buhler could not make the balloon payment due December 31, 2020. Therefore, she again requested and obtained from Sellers a written amendment to the Agreement extending the balloon payment due date to December 31, 2021.

Thereafter, Ms. Buhler continued to remit the required monthly payments for the next eleven months. However, when the December 2021 installment payment was due, Ms. Buhler informed Sellers that she could not and would not make the balloon payment. And as the extended maturity date of December 31, 2021 approached, Ms. Buhler requested another extension of the maturity date. This time Sellers denied the request and demanded full payment of the balance owing. But as Ms. Buhler had already stated, she did not remit the balloon payment and she failed to remit the December 2021 installment payment.

On January 24, 2022, Sellers' attorney sent Ms. Buhler a written notice of default, which stated that she had until February 25, 2022, to vacate the property. Following receipt of the letter, Ms. Buhler retained attorney Steven L. Lefkovitz to represent her in the dispute with Sellers.

In the interim, Ms. Buhler wired two months of installment payments into Sellers' rental account at their bank; however, the remittance was returned to Ms. Buhler on February 1, 2022, by Sellers' attorney, who stated the funds were transferred without Sellers' consent.

On February 4, 2022, Mr. Lefkovitz commenced a chancery court action on behalf of Ms. Buhler seeking a court order to allow her to retain possession of the Property and to set aside the alleged default on the Contract. Shortly thereafter, Sellers filed a Detainer Warrant in General Sessions Court to evict Ms. Buhler from the property. The general sessions court entered judgment in favor of Sellers on March 17, 2022, which judgment Ms. Buhler timely appealed to the circuit court.

On May 18, 2022, upon Mr. Lefkovitz's advice, Ms. Buhler filed a petition for relief under Chapter 11 of the Bankruptcy Code.[2] Mr. Lefkovitz's stated purpose of this filing was to obtain a determination that the Contract was an "executory contract" that could be assumed by the bankruptcy trustee under the provisions of 11 U.S.C. § 365 on behalf of Ms. Buhler. In the adversary proceeding with Sellers that followed, the bankruptcy court ruled that the Contract was not an executory contract. The ruling was based on the following findings as stated in the Memorandum Opinion from the adversary action in the bankruptcy court:

> The controlling facts here are clear and not credibly controverted. First, Ms. Buhler did not make the monthly payment due on December 1, 2021. Second, prior to the maturity date, Ms. Buhler indicated to Mr. Davis that she would not be able to make the balloon payment due on the maturity date per the agreement. Third, Ms. Buhler failed to make the balloon payment due on the maturity date per the agreement. All three of these instances result in a breach.
>
> When Ms. Buhler failed to make the December 2021 monthly payment, Mr. and Mrs. Davis could have issued a default notice permitting Ms. Buhler to cure the default within 10 days or face forfeiture.
>
> When Ms. Buhler indicated that she would not be able to make the balloon payment on the maturity date, she repudiated the contract and the Davis's available remedies included forfeiture. Once Ms. Buhler made that statement, Mr. and Mrs. Davis were not required to give Ms. Buhler a default notice. They were within their rights to let the agreement expire and retain the property through forfeiture without any formal legal action.
>
> When Ms. Buhler failed to make the balloon payment on the maturity date, the Contract terminated, and the available remedy of forfeiture was lawful at that time.
>
> Ms. Buhler argues that her failure to consummate the Contract with payment in full on the maturity date was a default, triggering the requirement for service of a default notice. *Id.* This argument is not credible in that the Contract terminated upon her failure to consummate.

Thus, the bankruptcy court ruled that the contract was not assumable under 11 U.S.C. § 365.

---

[2] Plaintiff was represented by the firm of Dunham Hildebrand, PLLC, in the bankruptcy court proceedings.

Thereafter, on May 11, 2023, Ms. Buhler (hereinafter "Ms. Buhler" or "Plaintiff") commenced this malpractice action against Defendant in the Circuit Court of Davidson County.[3] In pertinent part, the complaint alleges that Mr. Lefkovitz committed malpractice as follows:

a. By filing the inadequate Chancery Court case on her behalf and failing to include several viable legal theories and claims;

b. By failing to have the plaintiff cure the alleged default within 10 days of her having received the letter;

c. By failing to serve the Chancery Court complaint in a timely fashion, before the Davises filed their detainer warrant;

d. By failing to pay the funds which the plaintiff had available to complete the real estate transaction into the Clerk and Master's office in order to show her good faith intentions to complete her purchase;

e. By allowing the referred to detainer warrant to be issued against his client without any opposition and by recommending to the plaintiff that they allow the other side to win that round;

f. By failing to tender to the Davises counsel or to the General Sessions Court the funds which the plaintiff had available and brought to Court to complete the purchase;

g. By failing to properly respond to the default letter which the plaintiff had received from the Davises counsel;

h. By failing to advise the plaintiff to cure the default and pay the note off within 10 days after her receipt of the default letter;

i. By failing to properly handle the Chancery Court litigation[;]

j. By advising the plaintiff to file a bankruptcy proceeding;

Ms. Buhler's claims of malpractice are supported by the expert opinion of attorney Gary Patrick, the essence of which reads as follows:

---

[3] David G. Rogers, as Trustee of the Bankruptcy Estate for Julie Buhler, was added as a plaintiff to this action as the bankruptcy estate asserted an interest in this cause of action.

Assuming the Funds that Ms. Buhler had available to pay to Ms. Davis would have covered the full amount of the balloon payment owed to Ms. Davis, plus attorney's fees and late fees, and assuming Ms. Davis would have followed Rusnak's advice to accept those funds in satisfaction of the debt owed, and assuming Buhler told Lefkovitz she had the Funds within the ten (10) days from the January 24, 2022 default letter, it is my opinion that Steven Lefkovitz committed legal malpractice by failing to advise Buhler that the Funds should be tendered to Davis or Davis' attorney within ten (10) days of the January 24, 2022 default letter, and by failing to tender the Funds of Buhler to Ms. Davis's attorney, I also think that the Chancellor would have ordered Ms. Davis to have accepted the Funds and transfer the real estate to Ms. Buhler had the Funds been paid into the registry of the Court in a timely fashion.

Defendant responded by filing a motion for summary judgment contending, in part, that Ms. Buhler could not prove all essential elements of a malpractice claim.[4] Relying on the doctrine of collateral estoppel and the bankruptcy judgment in the adversary proceeding with Sellers, Defendant also asserted that Ms. Buhler was precluded from relitigating the issue of whether she had ten days to cure her breach.

Following arguments on Defendant's motion for summary judgment, the circuit court entered an order granting the motion. The circuit court found that a duty was proven, and that Mr. Lefkovitz breached that duty, stating:

[T]he Court finds the allegations of legal malpractice listed in the Complaint all stem from the issue of whether Plaintiff had a right to cure, and whether Mr. Lefkovitz was negligent in advising her throughout the process. The Court also notes Defendant concedes in its supporting memorandum that "[t]he pertinent issue here is whether Ms. Buhler had the right to cure her default of the Contract and, if so, whether Mr. Lefkovitz was negligent by failing to advise her to do so through various different means and methods." (Def.'s Mem.) Viewed in the light most favorable to Plaintiff, the Court finds that Mr. Patrick's expert report is sufficient to prove breach of duty.

Then the circuit court found that two essential elements of Ms. Buhler's claim were not proven. As for the fourth element, cause-in-fact, the court stated in pertinent part:

---

[4] The motion was supported by the affidavit of Mr. Lefkovitz who asserted that he complied with the standard of care in his actions and that his acts or omissions were not the cause-in-fact nor the proximate cause of Plaintiff's alleged injuries because the window to cure her default had already closed. The motion was also supported by a statement of undisputed facts and a memorandum of law.

Fourth, Plaintiff must prove Mr. Lefkovitz's breach of duty was the cause-in-fact of the damages that she suffered. *Gibson*, 58 S.W. at 108. Here, the Court finds Plaintiff has failed to prove that Mr. Lefkovitz's conduct was the cause-in-fact of her damages. Plaintiff produced some proof in attempting to show that Mr. Lefkovitz's conduct was the cause-in-fact of her damages. First, Plaintiff submitted the prior sworn testimony from the owner of the property, Ellen Davis, which was given in the bankruptcy proceeding; Ms. Ellen Davis stated that it was her understanding that Plaintiff would be entitled to the property if she performed all material obligations under the contract within ten days of receiving written notice from the Davises. (*See* Ex. 4 to Pls' Notice of Filing In Supp. of Resp. to Def.'s Mot. Summ. J., "Ex. 4.") Additionally, Ms. Ellen Davis's attorney, stated that, had Plaintiff tendered the funds necessary to complete the real estate transaction on December 31, 2021, he would have advised his client to take the funds and dismiss the eviction action. (*See* Ex. 3 to Pls.' Notice of Filing In Supp. of Resp. to Def's Mot. Summ. J., "Rusnak Aff. ¶ 4"). Each of these pieces of evidence indicates that, had Mr. Lefkovitz advised his client to tender the funds to Ms. Ellen Davis, her attorney, or the Clerk's Office, Plaintiff would have likely been entitled to the property.

However, Plaintiff did not ask Mr. Lefkovitz to represent her in the real estate dispute until sometime after receiving the January 24, 2022, letter from Ms. Ellen Davis's attorney. (*See* Ex. 3 to Pls.' Notice of Filing In Supp. of Resp. to Def.'s Mot. Summ. J., "Buhler Dep. 124: 15–21, 125: 7–25"). Mr. Lefkovitz could not have advised Plaintiff to tender the funds by December 31, 2021, when he was not involved in the action until sometime after January 22, 2024. Even if Ms. Ellen Davis had agreed to a ten-day cure period following the maturity date, Mr. Lefkovitz still could not have advised Plaintiff to tender the funds, as the cure period would have ended on January 10, 2022. Additionally, although Plaintiff testified that she could get the funds at any time, she did not have possession of the funds until March 15, 2022. (Buhler Dep. 128: 2–17, 130: 4–22.) Thus, the Court finds, even when viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine dispute of material fact as to the timing of when Mr. Lefkovitz began representation. For these reasons, the Court finds that Plaintiff has failed to establish that Mr. Lefkovitz's conduct was the cause-in-fact of Plaintiff's damages.

As for the fifth element, proximate cause, the circuit court stated in pertinent part:

Finally, Plaintiff must prove that Mr. Lefkovitz's negligence was the proximate cause of her damages. *Gibson*, 58 S.W. at 108. Here, the Court finds Plaintiff has not shown that Mr. Lefkovitz's conduct was the proximate

cause of her damages. As the Bankruptcy Court Opinion details, the land sale contract terminated upon Plaintiff's failure to consummate, which occurred on December 31, 2021. (Ex. B.) The Bankruptcy Court rejected Plaintiff's argument that her failure to complete the contract was merely a default, requiring notice of default and a ten-day cure period. *Id*. Rather, the Bankruptcy Court found that the contract terminated on the date Plaintiff failed to pay the balloon payment, and that forfeiture of the property was a lawful remedy for Ms. Ellen Davis to pursue. *Id*. The Court finds there is no genuine dispute of material fact that Plaintiff did not have a legal right to cure under the Contract and, thus, that Mr. Lefkovitz's failure to adequately advise her in the subsequent proceedings could not be the proximate cause of her losses.

Additionally, the circuit court noted that Defendant's motion for summary judgment also relied upon collateral estoppel in its motion for summary judgment, wherein Defendant asserted that the bankruptcy judgment barred Ms. Buhler from relitigating the issues relating to whether Ms. Buhler had a right to cure under the Contract. In its order, the court found there was no need for Defendant to rely on the doctrine because it had held that Ms. Buhler failed to establish the elements necessary for her legal malpractice claims, thus, the circuit court ruled that "collateral estoppel is inapplicable in this case."

Based on the foregoing, the circuit court granted Defendant's motion for summary judgment.

Ms. Buhler then filed a motion to alter or amend the foregoing judgment. Asserting generally that the decision of the bankruptcy court judge, which was partially relied upon by the circuit court in its order granting summary judgment, constituted "inadmissible hearsay," and that there was a disputed issue of material fact as to whether Ms. Buhler possessed sufficient funds prior to March 15, 2022 to pay the balloon payment. In its ruling on these issues, the circuit court stated:

1. The findings of fact made by Judge Walker in the Bankruptcy Court Opinion from Judge Walker ("Bankruptcy Opinion") constitute inadmissible hearsay based upon the opinion of *Hawk v. Chambliss, Bahner & Stophel P.C.*, No. E2022-01420-COA-R3-CV, 2024 Tenn. App. LEXIS, 332 (Tenn. Ct. App. July 31, 2024) (no perm. app. requested). The Court's Order Granting Defendant's Motion for Summary Judgment of November 12, 2024 shall therefore be amended to remove those factual findings which are cited to the Bankruptcy Opinion. The Court is not relying upon such facts in making its determination on Defendant's Motion for Summary Judgment. . . .

2. The ultimate conclusion reached in the Bankruptcy Opinion "that the contract was not an executory contract, and that it expired when the balloon payment was not timely made," does not constitute hearsay and is therefore relied upon by this Court in considering Defendant's Motion for Summary Judgment. As a result, the Court's previous findings in its Order Granting Defendant's Motion for Summary Judgment remain unchanged and the Court's grant of summary judgment for the reasons stated therein remains in effect[.]

This appeal followed.

### ISSUES

Ms. Buhler[5] raises the following issues:

1. Whether the Trial Court committed error in finding that the Defendant's malpractice was not the cause in fact of the Plaintiff's damages.

   a. The subsequent bankruptcy court opinion relied upon by the trial court constituted inadmissible hearsay and should not have been considered;

   b. The trial court committed error by not considering the malpractice as the cause in fact of the plaintiff's injury as of the relevant time frame;

   c. The trial court erred in finding that the plaintiff did not have the funds necessary to complete the purchase at the time the defendant committed malpractice.

2. Whether the trial court erred in finding that the Defendant's negligence was not the proximate cause of the Plaintiff's damages.

Defendant raises the following issue:

Whether Plaintiffs can establish that any act or omission by Defendant constituted a cause-in-fact or proximate cause of the alleged injury, where the record demonstrates that Defendant was not retained until after Plaintiff had materially breached the installment sales agreement, the contractual maturity date had lapsed thereby terminating the agreement, and Plaintiff no longer possessed any legal recourse to enforce the sale of the subject property.

---

[5] For clarity, we refer to the two plaintiffs in the singular, as Plaintiff, although we recognize that Mr. Rogers, as the trustee of the bankruptcy estate for Julie Buhler, has standing as a plaintiff as well.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, we must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.* Under Rule 56, "[t]he moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

"[T]o assist the Court in ascertaining whether there are any material facts in dispute," the party seeking summary judgment must provide "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph" and "supported by a specific citation to the record." *Id.* The opposing party must then "file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." *Id.*

If the moving party does not bear the burden of proof on the challenged claim at trial, the moving party must produce evidence that either negates an essential element of the nonmoving party's claim or shows that the nonmoving party does not have sufficient evidence to prove an essential element of its claim. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019). If the moving party satisfies its burden of production, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265). A party cannot create a genuine dispute of a material fact based on a conclusory statement. *See Lee v. Franklin Spec. Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 331 (Tenn. App. 2007).

"For facts to be considered at the summary judgment stage, they must be included in the record, and they must be admissible in evidence." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citations omitted). On appeal, we are not limited to the parties' statements of material facts, *TWB Architects, Inc.*, 578 S.W.3d at 889, but our review "is limited to the record before the trial court when it heard the motion," *Winter v. Smith*, 914 S.W.2d 527, 535 (Tenn. Ct. App. 1995) (citations omitted). Furthermore, "[t]he court is not to 'weigh' the evidence when evaluating a motion for summary judgment." *Byrd*, 847 S.W.2d at 211. We accept the evidence presented by the nonmoving party as true, consider

the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

## ANALYSIS

A legal malpractice claim has five essential elements: "(1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause-in-fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages." *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001). To prevail on a legal malpractice claim, the plaintiff must establish all five essential elements. *See id*. Because the plaintiff in a legal malpractice action bears the burden of proof on the claim at trial, Ms. Buhler must demonstrate at the summary judgment stage "the existence of specific facts in the record which could lead a rational trier of fact to find in favor of [Ms. Buhler]." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

The circuit court summarily dismissed the legal malpractice action on the ground that two essential elements of a legal malpractice claim were not proven. The court ruled that "Plaintiff has failed to prove that Mr. Lefkovitz's conduct was the cause-in-fact of her damages," and "Plaintiff has not shown that Mr. Lefkovitz's conduct was the proximate cause of her damages." Both findings were based, in principal part, on the fact that Ms. Buhler did not have the legal right to cure her breach of the Contract when Mr. Lefkovitz was retained. This is because, Defendant argues, the Contract terminated, at the latest, on the extended maturity date of December 31, 2021, because Ms. Buhler had unequivocally repudiated the Contract prior to that date. We agree.

As our Supreme Court explains in *UT Medical Group, Inc. v. Vogt*, 235 S.W.3d 110 (Tenn. 2007):

> **A party to a contract can take certain actions or make certain statements that repudiate it**. **Such a repudiation can occur when** a party "commit[s] a voluntary act which renders the party unable or apparently unable to perform the contract," *Wright v. Wright,* 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991); *see Restatement (Second) of Contracts* § 250 (1979), or when **"the words and conduct of the contracting party . . . amount to a total and unqualified refusal to perform the contract**." *Wright,* 832 S.W.2d at 545; *see Ky. Home Mut. Life Ins. Co. v. Rogers,* 196 Tenn. 641, 270 S.W.2d 188, 194–95 (1954); *Brady v. Oliver,* 125 Tenn. 595, 147 S.W. 1135, 1139 (Tenn. 1911); *Wilkins v. Third Nat. Bank in Nashville,* 884 S.W.2d 758, 761 (Tenn. Ct. App. 1994). . . .

*Id*. at 120 (emphasis added).

Prior to the extended maturity date, Ms. Buhler told Sellers that she could not and would not pay the balance owing by the extended maturity date, which unequivocal statement constituted a repudiation of the Contract. *See id.* ("When a repudiation occurs before the time that a contract requires a party to perform, the repudiating party has committed an 'anticipatory repudiation' or an 'anticipatory breach' of the contract."). In the wake of an anticipatory breach of a contract, the non-breaching party may elect to take one of three courses of action:

>  (1) rescind the contract and pursue remedies based on a rescission;

>  (2) treat the repudiation as an immediate breach by bringing suit or changing position in some way; or

>  (3) await the time for performance of the contract and bring suit after that time has arrived.

*Id.* at 120 (citing Williston on Contracts at § 63.33; *see Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 309 Ill. Dec. 686, 864 N.E.2d 927, 940 (Ill. App. Ct. 2007).

Believing that Ms. Buhler had repudiated the Contract, the Sellers demanded that Ms. Buhler vacate the premises, which evidences their election to terminate the Contract.[6] As further evidence that Sellers had elected to terminate the Contract, their counsel returned to Ms. Buhler two installment payments that were wired to Sellers' bank account without permission after the maturity date. Both actions were confirmed by correspondence to Ms. Buhler from legal counsel for Sellers.

For these reasons, we conclude that the Contract was terminated before Mr. Lefkovitz was retained. Thus, Ms. Buhler had no legal right to cure her breach of the contract when Mr. Lefkovitz was retained. Accordingly, we affirm the conclusion of the circuit court that Ms. Buhler failed to prove two essential elements of a breach of contract claim, that Mr. Lefkovitz's conduct was the cause-in-fact of her damages and that Mr. Lefkovitz's conduct was the proximate cause of her damages.

---

[6] As the record reveals, in a letter from Sellers' legal counsel to Ms. Buhler on January 24, 2022, Sellers demanded that Ms. Buhler vacate the premises. Ms. Buhler argues that this letter offered her ten days to cure her breach. We disagree, finding that the letter did not offer Ms. Buhler the option to cure her breach. To the contrary, the letter demanded that she vacate the premises.

Because Defendant established that Ms. Buhler failed to prove essential elements of her claim, *see TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d at 888, we affirm the summary dismissal of her complaint.

## IN CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court and costs of appeal are assessed against the appellants.

_____
FRANK G. CLEMENT JR., P.J., M.S.